In re JOHNS–MANVILLE
CORPORATION, et al.,
Debtors.

UNITED STATES of America,

v.

JOHNS–MANVILLE
CORPORATION, et al.

BOSTON AND MAINE
CORPORATION,
Plaintiff,

v.

JOHNS–MANVILLE CORPORATION,
et al., Defendants.

Nos. 86 Civ. 1745(PNL), 86
Civ. 1746(PNL).
Adv. Nos. 85–6828A, 85–6558A.

United States District Court,
S.D. New York.

Aug. 5, 1986.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, Alan Nisselson, Asst. U.S. Atty., for U.S., Joel M. Gross, Environmental Enforcement Section, Land and Natural Resources Div., U.S. Dept. of Justice, of counsel.

Sage Gray Todd & Sims, New York City, Kirkpatrick & Lockhart, Boston, Mass., for plaintiff Boston and Maine Corp., Robert W. Brundige, Jr., New York City, James E. Howard, Charles W. Mulcahy, Jr., Thomas L. Crotty, Jr., Boston, Mass., of counsel.

Davis Polk & Wardwell, Levin & Weintraub & Crames, New York City, for Johns-Manville Corp., et al., Lowell Gordon Harriss, Michael J. Lonergan, Edmund M. Emrich, of counsel.

LEVAL, District Judge.

These are motions by the plaintiffs in two related adversary proceedings in bankruptcy for mandatory withdrawal of reference to the Bankruptcy Court in accordance with 28 U.S.C. § 157(d). Plaintiffs who seek withdrawal from the Bankruptcy Court are the United States Environmental Protection Agency and Boston and Maine Corporation. The defendants are Johns-Manville Corporation and related companies, all under the protection of the automatic stay of § 362(a)(1) of the Bankruptcy Code. The adversary proceedings to which the motions relate are actions for declaratory judgment seeking rulings that causes of action asserted (or to be asserted) against Johns-Manville in the Federal District Court in Massachusetts are not barred by the automatic stay issued in this district in the Manville bankruptcy. The motions are granted.

*Background*

Boston & Maine Corp. owns a landfill in Billerica, Massachusetts which was used by Manville for the disposal of asbestos wastes at various times between 1944 and 1974. Manville and its related entities filed for reorganization under the Bankruptcy Code on August 26, 1982, at which time the automatic stay issued. In March 1984, the United States Center for Disease Control determined that the landfill posed a health hazard to nearby residents. The EPA, acting in response to this determination and pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.*, undertook to eliminate the health risks by spreading 2½ feet of gravel and topsoil over the asbestos contaminated areas. In so doing, the EPA incurred costs in excess of $1.1 million.

In August 1985, the United States filed suit in the District of Massachusetts to recover these costs from Boston & Maine in accordance with provisions of CERCLA. Before lodging its parallel suit against

Manville to recover the same costs, the United States brought this adversary proceeding in the Bankruptcy Court in this district seeking a declaratory judgment that the automatic stay does not bar the action. The Boston & Maine Corp. brought a parallel proceeding here seeking declaration of its right to make cross-claims in the Massachusetts suit against Manville, seeking contribution, indemnification, or reimbursement. The question whether the causes to be asserted against Manville in Massachusetts are stayed turns on whether those causes of action arose prior or subsequent to Manville's filing in bankruptcy. Causes of action that had not yet arisen at the time of the bankruptcy filing are not affected by the stay order.

The only question now before this court is whether these adversary proceedings seeking determination of the scope of the stay should be withdrawn from the Bankruptcy Court.

*Discussion*

The standard for mandatory withdrawal of reference was recently amended as part of the congressional response to *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). It is set forth in 28 U.S.C. § 157(d), which reads, in pertinent part:

> The district court shall, on timely motion of a party, so withdraw, a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

It is difficult to understand the meaning or purpose of this provision. If its reference to "other laws of the United States" is read literally, it applies to (and requires withdrawal of) enormous numbers of claims against bankrupts and would effectively defeat the attempts of the Code to rationalize bankruptcy litigation. After carefully examining the legislative history, the District Court for the Northern District of Ohio concluded *In re White Motor Corp.,* 42 B.R. 693, 703 (N.D.Ohio 1984), that with-

drawal is mandatory "only when" consideration of non-Code federal statutes "is necessary for the *resolution* of a case or proceeding" and that "substantial and material consideration" of those non-bankruptcy statutes must be involved before withdrawal will be mandatory. *Id.* at 704. This standard has been generally followed. *See, e.g., In re Baldwin United Corp.,* 57 B.R. 751, 757 (S.D.Ohio 1985); *United States v. ILCO,* 48 B.R. 1016, 1021 (N.D. Ala.1985). The parties in the instant case agree with the "substantial and material" standard, but disagree whether it is met on these facts.

Precisely where the substantial and material line falls is open to dispute. It would seem incompatible with congressional intent to provide a rational structure for the assertion of bankruptcy claims to withdraw each case involving the straightforward application of a federal statute to a particular set of facts. It is issues requiring significant *interpretation* of federal laws that Congress would have intended to have decided by a district judge rather than a bankruptcy judge. The instant application falls within this latter category.

The question whether the claims against Manville arose before or after it filed for bankruptcy requires interpretation of CERLA. Defendants argue the claims arose before because all defendants' acts giving rise to the liability concededly had been performed long before the bankruptcy filing. Plaintiff contends the liability did not arise until the EPA did the work for which it seeks reimbursement, which concededly did not occur until after the filing.

As was explained in *ILCO, supra* at 1021, CERCLA is a statute "rooted in the commerce clause" and is precisely "the type of law[ ] Congress had in mind when it enacted the statutory withdrawal provision." Furthermore, the question when such claims arise under CERCLA requires significant statutory interpretation. CERCLA is a complex and important statute without clarifying legislative history and with little judicial gloss, *see United States v. Price,* 577 F.Supp. 1103, 1009

(D.N.J.1983). Neither the language of the statute nor existing interpretive precedents provide clear answers to this substantial issue.

The question for adjudication in these adversary proceedings requires not only this significant interpretation of the CERCLA statute, but, in addition, assessment of the relationship of such CERCLA claims to the automatic stay arising under § 362(a)(1) of the Bankruptcy Code. It therefore seems quite clear that this controversy falls within the category of cases mandatorily withdrawn from the Bankruptcy court's jurisdiction by § 157(d), in that it "requires consideration of both title 11 and other laws of the United States regulating ... interstate commerce." *See Maislin Indus., United States v. C.J. Van Houten E Zoon Inc.*, 50 B.R. 943, 948 (E.D.Mich.1985) (withdrawing proceeding presenting conflict between Bankruptcy Code and Interstate Commerce Code).

I agree with defendants' argument that the mandatory withdrawal provision of § 157(d) is to be construed narrowly, so that it does not become an "escape hatch" for matters properly before the bankruptcy court. Nevertheless, resolution of the question involved in these adversary proceedings falls within such an appropriately narrow reading of § 157(d).

Manville contends that even if the issue raised by the United States comes within the mandatory withdrawal, that raised by Boston & Maine does not as it involves only a state law claim for contribution or indemnity. This contention is not substantial. Rights of contribution and indemnity under federally created causes of action have repeatedly been held to the question of federal law. *See Texas Indus. v. Radcliff Materials*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (finding no right of contribution under antitrust laws); *Northwest Airlines v. Transport Workers Union*, 451 U.S. 72, 90, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981) (federal right to contribution may be expressly or impliedly created by Congress). Furthermore, the same questions raised in the EPA proceedings are necessarily present in that brought by Boston & Maine. If EPA's cause of action against Boston & Maine did not arise until after Manville's filing, a strong argument can be made that Boston & Maine's claim for indemnity could not have arisen earlier than the claim being identified. I find no reason for different conclusions as to the withdrawal of the two intricately related proceedings.

The motions for withdrawal of the reference are granted.