In re COMBUSTION EQUIPMENT
ASSOCIATES, INC., Debtor.

CARTER DAY INDUSTRIES, INC.,
f/k/a Combustion Equipment
Associates, Inc., Plaintiff,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY and New Jersey Department of Environmental Protection, Defendants.

No. 86 CIV 5816 (LBS).

United States District Court,
S.D. New York.

Nov. 24, 1986.

Motion to withdraw reference granted.

Anderson Russell Kill & Olick, P.C., New York City, for plaintiff; Roy Babitt, Arthur S. Olick, Warren R. Graham, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendants; Alan

Nisselson, Asst. U.S. Atty., Elizabeth Yu, U.S. Dept. of Justice, of counsel.

SAND, District Judge.

Defendant United States Environmental Protection Agency ("EPA") brings this motion for an order under 28 U.S.C. § 157(d) (Supp.1985) withdrawing to the United States District Court the reference made earlier to the Bankruptcy Court of the underlying adversary proceeding. EPA claims simultaneously that the underlying action is not ripe for adjudication, and thus this Court lacks subject matter jurisdiction. The plaintiff, Carter Day Industries, Inc. ("Carter Day"), formerly known as Combustion Equipment Associates, Inc. ("CEA"), is currently protected as a reorganized debtor pursuant to the Bankruptcy Code. *See* 11 U.S.C. §§ 524, 1141(d) (West 1979 & Supp.1986). For the reasons stated herein, defendant's motion to withdraw the proceeding from the Bankruptcy Court so that Carter Day's claims will be determined in the District Court is granted, and Carter Day is granted two weeks time, to December 10, 1986, to respond to defendant's claim that this case is not ripe for adjudication.

*Facts and Underlying Proceeding*

This motion relates to an adversary proceeding brought by Carter Day against EPA and New Jersey Department of Environmental Protection ("NJDEP") seeking declaratory and injunctive relief. Carter Day contends in its action that its discharge in bankruptcy pursuant to 11 U.S.C. §§ 524 and 1141 has also discharged any potential liability that Carter Day may have under section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act, ("CERCLA"), 42 U.S.C.A. § 9607(a) (West 1983), concerning two landfill sites in Morris County, New Jersey. The question whether any claims against Carter Day may be asserted under CERCLA depends on when such claims are deemed to have arisen. The confirmation of a plan in Chapter 11 discharges the corporate debtor from any debt that arose before, but not after the date of such confirmation. 11 U.S.C. § 1141(d)(1)(A).

Following CEA's (now known as Carter Day) voluntary petition for relief under Chapter 11 of the Bankruptcy Code, a reorganization plan was confirmed by order of the Bankruptcy Court on December 21, 1983. Two years before, Combe Fill Corporation ("Combe Fill"), a wholly owned subsidiary of CEA, filed a separate voluntary petition for liquidation in accordance with Chapter 7 of the Code. Combe Fill had operated two solid waste disposal landfill sites in New Jersey which the EPA listed on its National Priority List of hazardous waste sites in accordance with CERCLA.

After closure of these sites in 1981, NJDEP filed a claim against Combe Fill for $5 million based on closure costs and penalties. On consent, the claim was allowed by the Bankruptcy Court in the amount of $50,000. In accordance with code sections applicable to Chapter 11 cases, this claim had been disallowed earlier when asserted against CEA. While EPA has filed no claim against CEA, it has settled a claim for administrative costs against Combe Fill for $50,000. The settlement is conditioned upon Bankruptcy Court approval of Combe Fill Trustee's application for leave to abandon the landfill sites.

In 1983, EPA advised CEA (among at least 100 other persons and entities) that the company was considered to be a potentially responsible party ("PRP") under CERCLA for remedial actions which might be taken in connection with the Combe Fill sites. Analytical results of groundwater samples taken in the vicinity showed groundwater contamination with substances considered hazardous under CERCLA. Pursuant to the statute, EPA has funded a Remedial Investigation and Feasibility Study ("RI/FS") at each site in order to identify an appropriate remedial strategy.

EPA incurred the bulk of the costs to conduct these studies after December 1983, the date at which CEA's reorganization plan was confirmed. Once EPA selects a remedy for the sites, if no PRP settles with

EPA and implements the remedy itself, most of EPA's expenditures for cleaning up the site will occur in the future. However, the government's brief indicates that at this time, it has not made a decision whether to take action against any PRP, including plaintiff. The government has not determined whether any PRP is legally liable, or whether enforcement action will in fact be necessary at all.

*The Withdrawal of Reference Standard*

The standard for withdrawal of reference from the Bankruptcy Court is contained in 28 U.S.C.A. § 157(d) (West Supp. 1986) and provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

This standard was part of the congressional response to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 785 (1982), which held unconstitutional the broad grant of jurisdiction given to bankruptcy judges under the Bankruptcy Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549, to hear and determine all matters arising under or related to Title 11. The question presented in this case involves that portion of section 157 that, if interpreted literally, provides for the mandatory withdrawal of reference in certain circumstances by virtue of Congress's use of the word "shall".

■ The Court recognizes that the literal interpretation of the last sentence of section 157 could result in a broad "escape hatch through which most bankruptcy matters [could] be removed to a district court." 130 Cong.Rec. H1850 (daily ed. Mar. 21, 1984) (Statement of Rep. Kramer), and that there is no indication that Congress intended through section 157 to so overhaul the bankruptcy jurisdiction. *See In re White Motor Corp.*, 42 B.R. 693, 697 (N.D.Ohio 1984) (Congress intended to retain as much as possible of bankruptcy court structure within constitutional constraints spelled out in *Marathon* ). Rather, the canons of statutory construction and the legislative history specific to section 157 indicate that Congress intended that the district courts would, as a mandatory matter, withdraw proceedings from the bankruptcy courts, but only in a limited class of cases.

■ The legislative history of section 157(d) and the case law interpreting it reveal that withdrawal is mandatory only when "substantial and material consideration" of federal statutes other than the Bankruptcy Code "is necessary for the *resolution* of a case or proceeding." *In re White Motor Corp.*, 42 B.R. at 703, 704; *see, e.g., United States v. ILCO, Inc.*, 48 B.R. 1016, 1021 (N.D.Ala.1985); *see also In re Baldwin-United Corp.*, 47 B.R. 898, 899 (S.D.Ohio 1984) (withdrawal is required only when resolution of the proceeding requires substantial consideration of both the Bankruptcy Code and federal interstate commerce laws.); *In re Maislin Industries, U.S., Inc.*, 50 B.R. 943, 947 (E.D. Mich.1985) (same). The Court further finds that when this standard is met, Congress intended that withdrawal is required, and not merely a matter of the district court's discretion.

The Court disagrees with plaintiff's assertion that "shall" in the last sentence of section 157 should be construed as the permissive "may." First, it is fundamental that when the actual language of a statute is clear, it is ordinarily conclusive. *United States v. Clark*, 454 U.S. 555, 560, 102 S.Ct. 805, 809, 70 L.Ed.2d 768 (1982); *Consumer Products Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Not only is the word "shall" unambiguous on its face, but the legislative history, which is controlling, supports the conclusion that withdrawal is mandatory in the limited set of cases outlined above. *See* 130 Cong. Rec. S6087 (daily ed. May 21, 1984) (re-

marks of Sen. Heflin) (district court "is mandated to grant a party's motion to withdraw proceedings involving both Title 11 and other laws of the United States regulating organizations and activities affecting interstate commerce"); S.Rep. No. 55, 98th Cong., 1st Sess. 16 (1983) ("recall is mandatory" where claim does not arise under Title 11 or where federal laws regulating organizations or activities affecting interstate commerce are involved); 130 Cong.Rec. S7622 (daily ed. June 19, 1984) (interpretation of section 157(d) by Sen. De-Concini) (withdrawal is mandatory when laws regulating organizations or activities affecting interstate commerce are likely to be considered); *cf. Patchogue Nursing Center v. Bowen*, 797 F.2d 1137, 1143 (2d Cir.1986) ("shall" is mandatory language). Therefore, if a case meets section 157(d)'s standard as interpreted above, the district court is required to grant a party's request for mandatory withdrawal.

*The District Court Must Determine When a CERCLA Claim Arises*

The issue presented in this case is essentially that which was presented in *United States v. Johns-Manville Corp.*, 63 B.R. 600 (S.D.N.Y.1986). In that case, Judge Leval determined that adversary proceedings brought against Johns-Manville following a determination of bankruptcy should be withdrawn from the Bankruptcy Court. The adversary proceedings sought declaratory judgments that the Bankruptcy Code's provision for an automatic stay of all judicial proceedings involving claims against the debtor which arose prior to the determination of bankruptcy, 11 U.S.C.A. § 362(a)(1) (West Supp.1986), did not bar EPA's action for cost recovery and a joint tortfeasor's action for contribution under CERCLA. The question whether the actions under CERCLA were to be stayed turned on whether these CERCLA causes of action "arose" prior or subsequent to Johns-Manville's filing in bankruptcy. Finding a significant interpretation of CERCLA and its relationship to the automatic stay provision necessary to resolve the issue, Judge Leval ordered withdrawal from the Bankruptcy Court.

Unlike *Johns-Manville*, in this case EPA does not seek a declaratory judgment that an action for cost recovery would not be stayed under section 362(a)(1). Rather, Carter Day seeks, in effect, just the opposite determination—a declaratory judgment that pursuant to 11 U.S.C. § 1141, Carter Day is discharged from debts arising out of any future action for CERCLA cost recovery as a result of its confirmation of bankruptcy. As in *Johns-Manville*, the question whether the declaratory judgment should issue turns on when the CERCLA cause of action is deemed to have arisen—prior or subsequent to the determination of bankruptcy—and its issuance similarly would result in precluding EPA from instituting an action to recover costs. The decision whether the proceeding at hand must be withdrawn from the Bankruptcy Court thus ultimately rests on the same issue as that decided by Judge Leval in the affirmative—whether determining if EPA has a claim and when it arose requires "substantial and material" consideration of CERCLA as well as bankruptcy law.

■ Although the bankruptcy code, 11 U.S.C. § 101(4) (West 1979), defines "claim" for purposes of bankruptcy law, the Code does not clearly establish when a right to payment arises. *In re M. Frenville Co., Inc.*, 744 F.2d 332, 337 (3d Cir. 1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). And as a general matter, there is debate over the law to be applied in determining when a claim arises in the bankruptcy context. *Compare Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946) (determining which claims of creditors are valid at time of bankruptcy in absence of overruling federal law is to be determined by reference to state law); *In re M. Frenville Co., Inc.*, 744 F.2d at 337 (absent overriding federal law, when a right to payment arises is to be determined by reference to state law) *with, e.g., In re Baldwin-United Corp. Litigation*, 765 F.2d 343, 348 n. 4 (2d Cir.1985) ("We are not as certain as the District

Court that, if we reached the issue, we would follow *Frenville . . . .*"); *In re Johns-Manville Corp.*, 57 B.R. 680, 690 (S.D.N.Y. 1986) (refuses to follow *Frenville* because it "ignores congressional intent to define 'claim' broadly [in the Bankruptcy Code]").

■ Accordingly, the Bankruptcy Code itself arguably can be interpreted to provide guidance as to when causes of action arise when bankruptcy plays a role. Therefore, the court that determines if and when EPA's cause of action arose and hence, whether CERCLA claims have been discharged as against Carter Day, will necessarily consider Title 11's definition of "claim." Moreover, the court must reconcile the interpretation of this definition with any possibly inconsistent interpretation of or provision in CERCLA providing for the accrual of causes of action under that statute.

The Court agrees with Judge Leval's conclusion in *Johns-Manville* that "substantial and material" consideration of the CERCLA statute is indeed necessary to resolve the question when causes of action for cost recovery under the act arise. First, Congress enacted CERCLA in 1980 in response to increasing concern over the consequences of reckless and improper disposal of hazardous waste. It intended to establish a comprehensive response and financing mechanism administered by EPA to abate and control serious problems associated with abandoned and inactive hazardous waste disposal sites. *See United States v. Price*, 577 F.Supp. 1103, 1109 (D.N.J.1983). Thus, as articulated by the district court in *United States v. ILCO, Inc.*, 48 B.R. 1016, 1021 (N.D.Ala.1985),— which withdrew a CERCLA-related cause of action from the bankruptcy court in accordance with section 157(d)—"CERCLA [is] rooted in the commerce clause" and clearly is "the type of law[ ] Congress had in mind when it enacted the mandatory withdrawal provision."

Second, the courts that have considered when a CERCLA section 107 cost recovery action arises have held that the language and intent of CERCLA indicate that a claim for costs does not arise until the expenses have been incurred. *See United States v. Price*, 577 F.Supp. at 1110; *see also United States v. Northeastern Pharmaceutical and Chemical Co., Inc.*, 579 F.Supp. 823, 852 (W.D.Mo.1984) (costs cannot be awarded until incurred, but liability for future costs can be presently determined). Regardless of the proper interpretaion of when a cause of action accrues for purposes of CERCLA, however, it is apparent that the determination would have significant effects on the timing of cleanup and cost recovery efforts by EPA. It is therefore an important question with economic and environmental ramifications reaching beyond the bankruptcy arena, and affecting many avenues of interstate commerce. Clearly, the determination of when a cause of action arises under CERCLA is a question integrally tied up with congressional purpose in creating a coherent mechanism for EPA expenditure and recovery of funds for cleanup of hazardous waste.

The conclusion that substantial consideration of CERCLA is essential to this determination of when a cause of action accrues under the act is underscored by the recent passage by Congress of amendments to CERCLA. These amendments include section 113(g), which specifies the period of time in which actions for recovery of costs may be brought. Superfund Amendments and Authorization Act of 1986, Pub.L. No. 99–499, § 113(g), 100 Stat. 1613 (1986) (enacted into law Oct. 17, 1986). These amendments to CERCLA clearly must be considered as a matter of first impression to resolve Carter Day's claim that it is not liable for CERCLA response costs as a bankruptcy debtor.

Since resolution of this proceeding requires substantial and material consideration of CERCLA, a federal statute affecting interstate commerce, in tandem with consideration of the Bankruptcy Code, withdrawal of this proceeding from the bankruptcy court is required pursuant to section 157(d). *See also In re Baldwin-United Corp.*, 57 B.R. 751, 755–58 (S.D. Ohio 1985) (issue of debtor's actual liability

under federal nonbankruptcy law should be determined by district court); *In re Maislin Industries, U.S., Inc.,* 50 B.R. 943, 948 (E.D.Mich.1985) (where claim accrual and extinguishment was to be determined by reference to both federal bankruptcy and nonbankruptcy law, proceeding was properly withdrawn from bankruptcy court).

As to EPA's assertion that Carter Day's adversary proceeding seeking a determination on the dischargeability of potential EPA claims is not ripe for determination, Carter Day should have the opportunity to respond. Thus, EPA's motion to withdraw the reference is granted, and Carter Day is given two weeks, until December 10, 1986, to respond to EPA's claim that this proceeding is not ripe.

SO ORDERED.