**In re CHATEAUGAY CORPORATION, Reomar, Inc., The LTV Corporation, et al., Debtors.**

**FRITO–LAY, INC., FL Holding, Inc. and Airwick Corporation, Petitioners,**

v.

**CHATEAUGAY CORPORATION, et al., Respondents.**

**Bankruptcy Nos. 86 B 11270 (BRL) to 86 B 11334 (BRL), 86 B 11402 (BRL) and 86 B 11464 (BRL). No. 89 Civ. 1993 (JFK).**

United States District Court, S.D. New York.

April 20, 1989.

Shea & Gould and Friedman, Wang & Bleiberg, P.C., New York City (Martin I. Shelton, and Arthur S. Friedman, of counsel), for petitioners.

Davis Polk & Wardwell and Levin & Weintraub & Crames, New York City (Karen Wagner, Barbara Giuffre and Marc Abrams, of counsel), for respondents.

OPINION and ORDER

KEENAN, District Judge:

The debtors in this bankruptcy proceeding, the LTV Corporation ("LTV"), have moved in the Bankruptcy Court (Lifland, J.) for an order adjudging that certain Tax Benefit Transfer Agreements ("TBT Agreements") entered into between Frito–Lay Inc., FL Holding, Inc., and Airwick Corp. ("Frito–Lay"), and LTV are concluded agreements providing for the transfer of federal income tax benefits, and are not true leases. The debtors also seek an order determining that the TBT Agreements are not executory contracts under the Bankruptcy Code and that any claims Frito–Lay may have relating to the TBT Agreements are pre-petition, general unsecured claims not entitled to priority. *See* Frito Lay's Exh. B.

On March 20, 1989, LTV also filed a motion for summary judgment in the Bankruptcy Court, seeking an order declaring that the TBT Agreements pertaining to LTV's Buffalo Works property do not con-

stitute executory contracts or unexpired leases susceptible to assumption or rejection under the Bankruptcy Code, and any indemnity loss claim of Frito–Lay relating to the Buffalo Works property TBT Agreement is a general unsecured claim, not entitled to priority treatment under the Bankruptcy Code. Frito–Lay moves in this Court for an order pursuant to 28 U.S.C. § 157(d) withdrawing LTV's applications from consideration by the Bankruptcy Court. For the reasons set forth below, the motion for withdrawal is denied.

## FACTS

Starting in 1981, Frito–Lay entered into approximately twenty-five TBT Agreements and safe harbor leases with LTV through various predecessors-in-interest of LTV. *See* Amended Affirmation of Marc Abrams, ¶ 10 ("Abrams Aff."). The safe harbor leases were entered into pursuant to former § 168(f)(8) of the Internal Revenue Code. This provision authorized the transfer of tax benefits from a financially unsound "lessee" which could not advantageously use the benefits because it had no taxable income, to a "lessor" which could make better use of the benefits.

LTV owned various items of property eligible for tax benefits pursuant to § 168(f)(8). In need of immediate capital, LTV sold the property (the "Safe Harbor Property" or the "TBT Assets") to Frito–Lay for federal income tax purposes and received a large cash payment plus an interest bearing installment note for the balance of the fair market value of the property. Frito–Lay leased back the Safe Harbor Property to LTV in exchange for monthly lease payments equal to the installment payments due under the note.

Pursuant to the deal, LTV assumed an obligation to ensure that the property remains "Section 38 Property" under the Internal Revenue Code to enable Frito–Lay and LTV to continue to enjoy the tax benefits of the Safe Harbor Property. Should LTV fail to maintain the Safe Harbor Property as qualified Section 38 property, §§ 5c.168(f)(8)–8(b) and (d) of the Temporary Treasury Regulations provide that

"... as of the date of the disqualifying event ... the disqualifying event will be deemed to be a sale of the qualified leased property by the Lessor [Frito–Lay] to the Lessee [LTV]," resulting in a taxable gain to the lessor. In order to allay Frito Lay's concerns over the possibility of "forced sales" of the Safe Harbor Property under the tax laws, LTV agreed to indemnify Frito–Lay against the possible tax losses.

Frito–Lay contends that post-petition restructuring of several of the Safe Harbor Properties by LTV has triggered indemnity losses under certain TBT Agreements. Frito–Lay maintains that the restructuring activities have resulted in accelerated federal income tax liabilities and that these losses are entitled to priority as expenses of administration of the bankruptcy estate. *See* Proof of Administrative Claim for Frito–Lay, Inc. dated February 22, 1989 at ¶¶ 3, 8. LTV has filed original and amended objections to the allowance of Frito–Lay's claims. The amended objection seeks an order of the Bankruptcy Court determining that under § 365 of the Bankruptcy Code the TBT Agreements are not unexpired leases or executory contracts, as well as a determination that all of Frito–Lay's TBT Agreements claims are pre-petition general unsecured claims, regardless of when a particular indemnity loss is incurred.

Frito–Lay argues that withdrawal of LTV's objection from the Bankruptcy Court is mandated by 28 U.S.C. § 157(d) because resolution of the objection will entail consideration of non-bankruptcy law. This Court disagrees.

## DISCUSSION

28 U.S.C. § 157(d), in relevant part, provides that:

"[t]he district court shall, on timely motion of a party ... withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."

This provision is to be accorded a narrow scope. *See Pension Benefit Guaranty Corp. v. The LTV Corp. (In re Chateaugay Corp.)*, 86 B.R. 33, 36 (S.D.N.Y.1987); *Carter Day Indus., Inc. v. U.S. Environ. Prot. Agcy (In re Combustion Equip. Assoc's, Inc.)*, 67 B.R. 709, 711 (S.D.N.Y. 1986). In *Carter Day*, the Court examined the Congressional Record relating to § 157(d) and observed:

> "[t]he legislative history of Section 157(d) and the case law interpreting it reveal that withdrawal is mandatory only when 'substantial and material consideration' of federal statutes other than the Bankruptcy Code 'is necessary for the resolution of a case or proceeding.'" (Citations omitted).

*Carter Day*, 67 B.R. at 711. *Accord American Telephone & Telegraph Co. v. Chateaugay Corp.*, 88 B.R. 581, 583–84 (S.D.N.Y.1988). The underlying substantive rights which Frito–Lay seeks to assert undoubtedly emanate from non-bankruptcy law. The controversy which Frito–Lay wishes to withdraw from the Bankruptcy Court, however, does not demand "substantial and material consideration" of non-bankruptcy law for its resolution.

The only issue presented by LTV's application in the Bankruptcy Court is the status and amount of any claims Frito–Lay might have under the TBT Agreements. Frito–Lay's claims are not created by tax law, but rather spring from LTV's agreement to indemnify Frito–Lay for certain tax losses. The inquiry into whether Frito–Lay's claims are entitled to administrative status entails no consideration of tax law.

Frito–Lay's assertion that LTV's amended objection implicates the question of what constitutes a disqualifying event under the repealed provisions of the tax law is unavailing because it "jumps the gun." At this juncture, the only issue before the Bankruptcy Court is whether LTV's *contractual* obligation to indemnify accords Frito–Lay an administrative or general unsecured claim. The determination of whether to allow Frito–Lay's claims as administrative claims is a classic bankruptcy matter. *See In re Baldwin–United Corp.*, 57 B.R. 751, 756–57 (S.D.Ohio 1985).

## CONCLUSION

For the reasons stated above, Frito Lay's motion to withdraw the reference to the Bankruptcy Court is denied. This action is ordered removed from the active docket of this Court.

SO ORDERED.