In re IONOSPHERE CLUBS, INC. and Eastern Air Lines, Inc., Debtors.

INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, et al. Plaintiffs,

v.

EASTERN AIR LINES, INC., Defendant.

No. 89 CIV. 4943(SWK).

Bankruptcy Nos. 89 B 10448, 89 B 10449 (BRL).

United States District Court, S.D. New York.

July 21, 1989.

See also, Bkrtcy., 101 B.R. 844.

---

MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Presently before this Court is the motion of three unions pursuant to 28 U.S.C. § 157(d) (1988) and Bankruptcy Rule 5011 for the withdrawal from the United States Bankruptcy Court to the Southern District of New York of an adversary proceeding brought by Eastern Air Lines, Inc. ("Eastern"). The movants are the International Association of Machinists and Aerospace Workers ("IAM"), the Airline Pilots Association, International ("ALPA"), and the Transport Workers Union of America ("Transport Workers").[1]

Background

This action stems from a labor dispute that developed after Eastern Air Lines and

---

**1.** The IAM is the authorized collective bargaining representative under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, for the mechanics, ground service personnel and other employees of Eastern; the ALAP is the authorized collective bargaining representative for the Eastern pilots; and the TWU is the authorized collective bargaining representative for the flight attendants employed by Eastern.

the IAM failed to reach a collective bargaining agreement, the negotiations of which began on October 2, 1987. The other unions have joined the IAM in a sympathy strike. Following fruitless negotiations and failed mediation, the National Mediation Board ("NMB") released the parties from mediation on February 1, 1989, with self-help precluded for a thirty day "cooling-off" period. After unsuccessful mediation, Eastern twice declined to submit to arbitration: once at the suggestion of the IAM, and then also at the suggestion of the NMB on February 1, 1989. *See* IAM's Memorandum of Law in Support of Withdrawal, at 3. On February 24, 1989, the NMB made the recommendation to the President that he appoint an Emergency Board pursuant to Section 10 of Railway Labor Act ("RLA"), 45 U.S.C. § 160, as the labor dispute threatened substantially to interrupt interstate commerce. On March 3, 1989, the President declined to appoint an Emergency Board, and on the following day the union began its strike.

On March 9, 1989, Eastern filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.*, and the case was assigned to United States Bankruptcy Judge Burton R. Lifland. After a March 22, 1989 evidentiary hearing, the Bankruptcy Court issued a temporary restraining order ("TRO"), which barred the IAM from engaging in conduct in connection with the strike, including "violence, threats, mass picketing, . . . assaults, nuisance, trespass, defamation and disorderly conduct." *See* Eastern Memorandum in Opposition to Withdrawal, at 2. Only the IAM, not the other unions, were parties to the earlier proceedings and the March TRO. Judge Lifland set a March 29, 1989 preliminary injunction hearing.

In a March 23 proceeding assigned to United States District Judge Charles S. Haight, the IAM sought withdrawal under 28 U.S.C. § 157(d), as well as a stay of the TRO and the preliminary injunction hearing. At a March 23 hearing, Judge Haight declined either to stay the proceeding before the Bankruptcy Court or to grant the IAM's withdrawal motion. On March 24,

1989, the Bankruptcy Court issued a second temporary restraining order with regard to IAM's picketing at Logan Airport in Boston, which the IAM appealed to Judge Haight. The appeal, not the withdrawal motion, was denied on March 25 because of the absence of a record below. In a telephonic hearing on March 25, 1989, Judge Haight also declined to stay the Bankruptcy Court proceeding. After commencing the March 29 preliminary injunction hearing, it was continued until April 5, and later settled on the record by the parties.

On July 17, 1989, Eastern applied to reopen the settled adversary proceeding, to amend its complaint to add the TWU and ALPA as defendants, and to issue a TRO against the three unions, enjoining alleged illegal conduct by all the defendants and the IAM's purported breach of its settlement agreement. The amended complaint alleged that the defendants had injured Eastern by engaging in, and having engaged in, acts of violence, threats, mass picketing, intimidation of Eastern's employees and customers, and other acts claimed to be unlawful. On the same day, July 17, 1989, the Bankruptcy Court issued the TRO about which the unions now object. In essence, the TRO enjoins the unions, their representatives and employees from

permitting, instigating, authorizing, encouraging, participating in, ratifying, approving, directing, threatening, supporting, defending, or causing the disruption of Eastern's operations at LaGuardia and/or Hartsfield Airports by: (i) trespassing unlawfully on the property or premises of Eastern, and otherwise obstructing or preventing Eastern, its employees, customers and others having business with Eastern from free access to and from Eastern's property and premises; (ii) wrongfully confining Eastern's employees, customers, or others having business with Eastern, and depriving them of their right to freely enter onto and exit from the property and premises of Eastern; (iii) assaulting Eastern's officers, agents, representatives, employees, by means of violence,

threats, intimidation, mass picketing or other conduct intended to inflict personal injury or put such individuals in imminent apprehension of harm; (iv) unlawfully harassing Eastern's customers or the general public at or in the vicinity of Eastern's facilities, including making threats to their safety if they fly Eastern; (v) engaging in disorderly conduct or disturbing the peace directed at Eastern's officers, agents, representatives, employees, customers, or others having business dealings with Eastern, (vi) vandalizing and destroying Eastern's facilities, fixtures and other personal property ...

*See* Exhibit B to the Affidavit of Peter Herman in Support of ALPA's Motion, at 7–8. This Court heard oral argument on this motion on July 20. The preliminary injunction hearing in the Bankruptcy Court, which the unions seek this Court to enjoin, is scheduled for July 24, 1989.

The unions now contend that this is a case where mandatory withdrawal of this adversary proceeding would be appropriate, as the resolution of Eastern's request for injunctive relief necessarily requires interpretation of section 157(b)(2) of the Bankruptcy Code,[2] the Norris–LaGuardia Act and the RLA, as well as the First and Fourteenth Amendments and Supremacy Clause of the United States Constitution. This motion is opposed by Eastern, which primarily argues that the unions have not shown that "substantial and material consideration" of non-Bankruptcy Code federal statutes is necessary for the resolution of ... [the] proceeding." Memorandum of Law of Eastern in Opposition of Withdrawal and Stay at 4 (citing *In re Johns–Manville Corp.*, 63 B.R. 600 (S.D.N.Y.1986); *In re Combustion Equipment Association, Inc.*, 67 B.R. 709 (S.D.N.Y.1986)). In contrast, Eastern contends that the Bankrupt-

cy Court has merely enjoined unlawful conduct such as trespass and violent acts of intimidation. Consequently, Eastern argues that this proceeding need not be withdrawn and instead should be appropriately handled by the Bankruptcy Court, as it requires only the "straightforward application of a federal statute to a particular set of facts" and not "issues requiring significant interpretation of federal laws." *Id.* (quoting *In re Johns–Manville Corp., supra,* 63 B.R. at 602). In addition, Eastern contends that this is a "core" proceeding, and on this basis, it also argues that withdrawal should be denied.

## Discussion

■ Bankruptcy Courts have jurisdiction to "hear and determine ... all core proceedings ... arising in a case under title 11." 28 U.S.C. § 157(b)(1) (1988). Furthermore, a "bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," with certain limitations not relevant here. *See* 28 U.S.C. § 157(c)(1) (1988). Nevertheless, the Bankruptcy Amendments and Federal Judgeship Act of 1984, which created the mandatory withdrawal section now before this Court, has been interpreted as to apply to both core and related matters. *See Burger King Corp. v. B–K of Kansas, Inc.*, 64 B.R. 728, 732 (D.Kan.1986); *In re White Motor*, 42 B.R. 693, 701 (D.Ohio 1984). Consequently, this Court does not rely on the distinction made by Eastern regarding core/non-core matters.

■ Withdrawal under 28 U.S.C. § 157(d)[3] is not available merely whenever non-Bankruptcy Code federal statutes will be considered in the Bankruptcy Court proceeding, but is reserved for cases where substantial and material consideration of

---

**2.** 28 U.S.C. § 157(b)(2) sets forth a non-exclusive list of "core proceedings".

**3.** Section 157(d) states:
  The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court *shall*, on timely motion of a

party, so withdraw a proceeding if the court determines that resolution of a proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.
  *Id.* (emphasis added). The timeliness of the unions' motion is not an issue raised before this Court.

non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding. *Compare In re Combustion Equipment Associates, Inc.,* 67 B.R. 709 (S.D.N.Y.1986) (withdrawal granted where the effect of bankruptcy on debts under the Comprehensive Environmental Response Compensation and Liability Act required many interpretations of first impression concerning CERCLA), *later proceeding,* 73 B.R. 85, *aff'd,* 838 F.2d 35 (2d Cir.1988) *with Tedesco v. Mishkin,* 53 B.R. 120 (S.D.N.Y. 1985) (court did not find that other federal statutes would be substantially involved in the issue of whether the Bankruptcy Court could order the sale of certain property). Section 157(d) has been read to mandate withdrawal "only if [the District Court] can make an affirmative determination that resolution of the claims will require substantial and material consideration of non-code statutes." *In re White Motors, supra,* 42 B.R. at 705 (court denies withdrawal, although some ERISA and Internal Revenue Code issues would likely be raised in the Bankruptcy Court, in order to support underlying purposes of having a Bankruptcy Court, and to discourage forum shopping and a multiplicity of forums).

■ In their briefs and at oral argument, the unions argued that this matter falls within the scope of section 157(d), as it necessarily requires the interpretation of Section 8 of the Norris–LaGuardia Act, 29 U.S.C. § 108, and the RLA, which construed together, purportedly have been interpreted to preclude a party who has refused voluntary arbitration to later obtain an injunction. *See Brotherhood of Railroad Trainmen, Enterprise Lodge v. Toledo, Peoria and Western Railroad,* 321 U.S. 50, 64 S.Ct. 413, 88 L.Ed. 534 (1944). Additionally, the unions argue that the injunction, which enjoins the defendants from "unlawfully harassing Eastern's customers or the general public at or in the vicinity of Eastern's facilities, including making threats to their safety if they fly Eastern" violates the First Amendment of the United States Constitution. The unions complain that their picket signs, some of which are imprinted with the slogan "fly cheap, die cheap" are protected speech and that the injunction is in violation of the First Amendment. This Court notes that non-violent picketing is protected by the First Amendment as expressive conduct. *See Police Department of Chicago v. Moseley,* 408 U.S. 92, 99, 92 S.Ct. 2286, 2292, 33 L.Ed.2d 212 (1972) (citing *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940)). Nonetheless, the issue before this Court is whether the relief sought by Eastern in the adversary proceeding will require the material and substantial consideration of non-Bankruptcy federal statutes. Upon application of this standard, this Court finds that the unions have not demonstrated that the required application of non-Bankruptcy Code law here would mandate withdrawal. To the extent that the Bankruptcy Court errs in its ancillary determinations of non-Bankruptcy law, the unions may have a right to appeal, but they have not at this time demonstrated a right to mandatory withdrawal.

This Court has recognized that the "substantial and material" standard is amorphous. As a matter of common sense, this Court has stated:

> It would seem incompatible with congressional intent to provide a rational structure for the assertion of bankruptcy claims to withdraw each case involving the straightforward application of a federal statute to a particular set of facts. It is issues requiring significant *interpretation* of federal laws that Congress would have intended to have decided by a district judge rather than a bankruptcy judge.

*In re Johns–Manville Corp.,* 63 B.R. 600, 602 (S.D.N.Y.1986) (emphasis in original); *see also In re Chateaugay Corp.,* 86 B.R. 33, 36 (S.D.N.Y.1987). This Court also notes that section 157(d) "is to be construed narrowly, so that it does not become an 'escape hatch' for matters properly before the bankruptcy court." *In re Johns–Manville, supra,* 63 B.R. at 603.

■ The mandatory withdrawal standard is more likely satisfied when the non-Bankruptcy law under consideration raises issues of first impression. *See In re Chateaugay Corp.,* 86 B.R. 33, 36 (S.D.N.Y. 1987) (interpretation of Comprehensive En-

vironmental Response, Compensation and Liability Act); *In re Combustion Equipment Associates, Inc.*, 67 B.R. 709, 713 (S.D.N.Y.1986) (interpretation of same statute). In contrast, the non-Bankruptcy issues presented by this adversary proceeding are not of first impression. While any application of a statute to a factual situation necessitates a degree of statutory interpretation, as is the case here, Congress could not have intended to provide mandatory withdrawal in cases that merely involve a routine application of established legal standards. The present proceeding involves the routine application of non-Bankruptcy Code federal statutes.

This Court notes that "[a] United States Court, may in certain instances, issue an injunction within the constraints of 29 U.S.C. § 107." *See In re Warren–Ehret–Linck Co.*, 52 B.R. 47 (E.D.Pa.1985). This case involves a relatively straightforward application of long-standing standards concerning the limited availability of injunctions under the Norris–LaGuardia Act. Furthermore, the First Amendment issues do not satisfy the withdrawal standard, which requires the substantial and material consideration of a non-Bankruptcy federal statute. The First Amendment issues raised by the injunctive relief do not specifically implicate a federal statute. More importantly, this Court finds that these purported First Amendment issues do not constitute substantial and material considerations for the resolution of the adversary proceeding. By finding that the presence of these non-Bankruptcy issues of federal law does not mandate withdrawal, this Court does not pass on the separate question of whether or not the Bankruptcy Court's actions would be upheld as valid on appeal.

### Conclusion

For the aforementioned reasons, the unions' motion for mandatory withdrawal is denied.

SO ORDERED.