**In re NATIONAL GYPSUM COMPANY, a Delaware Corporation, Aancor Holdings, Inc., a Delaware Corporation.**

**ENVIRONMENTAL PROTECTION AGENCY, U.S. Dept. of Interior**

**v.**

**NATIONAL GYPSUM CO., et al.**

Civ. A. No. 3–91–1653–H.
Bankruptcy Nos. 390–37214–SAF–11, 390–37213–SAF–11.

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 13, 1991.

Boe W. Martin, Keith W. Harvey, Johnson & Gibbs, P.C., Dallas, Tex., David F. Williams, James Moorman, Cadwalader, Wickersham & Taft, Washington, D.C., Rebecca O. Beasley, National Gypsum Co., Dallas, Tex., for debtors.

Marvin Laurence Collins, U.S. Atty., Rebecca A. Gregory, Dallas, Tex., David L. Dain, U.S. Dept. of Justice Environment & Natural Resources Div., John Wheeler, U.S. Environmental Protection Agency, Anna Wolgast, Jeffery K. Gordon, Peter E. Jaffe, U.S. Dept. of Justice, Carolyn Dibona, Office of the Solicitor Department of the Interior, Washington, D.C., for plaintiffs.

Barbara J. Houser, Leonard M. Parkins, Dallas, Tex., Anne Marie Ferazzi, Sheinfeld, Maley & Kay, Houston, Tex., for Official Committee of Asbestos Claimants of National Gypsum Co., movant.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court are the United States Environmental Protection Agency ("EPA"), and the United States Department of Interior ("DOI") Memorandum in Support of Motion for Withdrawal of Reference Pursuant to 28 U.S.C. § 157(d) ("U.S. Motion to Withdraw"), filed on August 16, 1991; and Debtors' Opposition to said Motion ("Debtors' Opposition"), filed August 30, 1991.

### I. *Factual Background*

National Gypsum Co. ("Gypsum"), along with its parent corporation, Aancor Holding Inc., (collectively "Debtors"), filed a voluntary petition for bankruptcy on October 28, 1990, under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* ("Code"). Since the petition date, Debtors have operated their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Code.

On May 29, 1991, the United States filed its Proof of Claim ("Proof of Claim") on behalf of EPA and DOI. Pursuant to CERCLA[1], the United States' Proof of Claim focuses on seven manufacturing plants nationwide that it alleges were owned and operated by Debtors, and that Debtors generated or disposed of hazardous substances thereby. The Proof of Claim involves Debtors' liability on primarily three grounds: past response costs[2], future response cost, and natural resource damages. Liability is premised on sections

---

[1]. CERCLA refers to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C.A. §§ 9601–9626 (1991).

[2]. Section 104 of CERCLA authorizes EPA to take "any ... response measure consistent with the national contingency plan which [EPA] deems necessary to protect the public health or welfare or the environment" whenever "any hazardous substance is released or there is a substantial threat of such a release into the environment...." 42 U.S.C. § 9604(a). EPA selects an appropriate remedy and can either order the potentially responsible party to take the remedial action under Section 106(a) (42 U.S.C. § 9606(a)); or take the remedial action itself, using so-called Superfund money, and seek reimbursement for such response costs under section 107(a) (42 U.S.C. § 9607(a)).

107(a)(1), (2) and (3) of CERCLA, 42 U.S.C. §§ 9607(a)(1), (2) and (3), respectively.

First, the United States asserts that the Debtors are jointly and severally liable for all costs of past response actions incurred by the EPA at these sites. *See* U.S. Motion to Withdraw at 4.

Second, the United States asserts that the costs of any response costs that may be undertaken after confirmation of Debtors' plan of reorganization, do not fall under the definition of "claim," as provided in Section 101(4) of the Code.[3] In the alternative, should the Court find that future response costs are "claims" subject to discharge, the United States has also filed its Proof of Claim for such costs as contingent claims. *Id.*

Third, the United States asserts "that natural resources damages for which a suit may not be maintained before confirmation of a plan of reorganization do not give rise to 'claims' within the meaning of the Bankruptcy Code subject to discharge in the bankruptcy proceedings." *Id.* at 5. However, should the Court determine that the cost of such natural resource damages are "claims" subject to discharge, the Proof of Claim reflects loss and destruction of natural resources for four sites. *Id.*

On August 2, 1991 the Debtors filed with the bankruptcy court an Objection to the Proof of Claim. The Debtors objected to the Proof of Claim on numerous grounds, arguing, *inter alia*, that:

1. The United States has not established that there were releases or threatened releases of hazardous substances at the sites;

2. The United States has not established that the costs incurred by the United States at the sites were consistent with the National Contingency Plan promulgated pursuant to CERCLA; and

3. Any liability Debtors may have for costs at the sites is not joint and several with other liable parties, but is limited to the Debtors' fair and equitable share. U.S. Motion to Withdraw at 5–6.[4]

On August 2, 1991, the Debtors filed a Motion to Estimate the Claims of the United States Pursuant to Section 502(c)(1) of the Code. In this motion, the Debtors realleged the same objections raised in their objection to the Proof of Claim. *See* U.S. Motion to Withdraw at 6.

On August 2, 1991, the Debtors also filed a Motion to Classify the Claims of the United States Pursuant to Rule 3013 of the Bankruptcy Rules of Practice and Procedure. In this motion, the Debtors requested an Order from the Bankruptcy Court stating that all claims of the United States are general and unsecured, and are not entitled to administrative priority. *See* U.S. Motion to Withdraw at 6.

On August 30, 1991, contemporaneous with their present opposition before this Court, the Debtors filed with the bankruptcy court a motion to bifurcate the litigation into an estimation and classification phase ("Phase One") and a liability phase addressing ultimate allowance ("Phase Two"). *See* Debtors' Opposition at 4. Debtors claim that resolution of the estimation and classification phase of the proceedings entails determination of the following four issues:

---

**3.** All such "claims" are normally subject to discharge after confirmation on a *pro rata* basis, pursuant to Section 1141 of the Code. However, if instead the costs incurred by the United States are deemed to be administrative claims, they must be paid in full on the effective date of the reorganization plan, pursuant to Section 1129(a)(9)(A) of the Code.

**4.** Neither the United States nor the Debtors have provided to this Court copies of their respective Proof of Claim and Objections thereto. Furthermore, it is only in the United States' motion that some of the grounds for Debtors' objections are identified. The Court relies on this representation in order to assess the nature of the issues surrounding the Proof of Claim for purposes of withdrawal of reference. "The type of jurisdiction that bankruptcy courts may exercise over matters arising under federal ... environmental laws should depend on the exact nature of the issue." Arlene E. Mirsky et al., *The Interface Between Bankruptcy and Environmental Laws,* 46 Bus.Law. 623, 643 (1991) [hereinafter *Interface*].

For the same reason, the Court relies on the United States' representation of the contents of Debtors' Motions for estimating and for classifying United States' claims, discussed below.

1. When the United States Claims arose, and whether they constitute "claims" under Code;

2. Whether response costs and damages at *unlisted* sites constitute claims;

3. Whether claims regarding the Salford Quarry are "administrative" or "prepetition" under the Code; and

4. Whether the United States Claims are "dischargeable" under the Code.

*Id.* at 7.

On August 16, 1991, the United States filed its motion for withdrawal; on August 30, 1991, the Debtors' filed their opposition.

## II. *Parties' Contentions*

The United States seeks withdrawal of reference under 28 U.S.C. § 157(d) primarily on the grounds that resolution of its Proof of Claim and Debtors' objections requires substantial and material consideration of both the Code and CERCLA, which regulates organizations or activities affecting interstate commerce.

In opposition, the Debtors contend that:

1. The estimation and classification phase of the proceedings should not be withdrawn, because they involve purely bankruptcy procedures; and

2. Withdrawal of the estimation and classification phase, as well as the liability phase, will have a serious adverse impact on the ability of the bankruptcy court to administer the case in a timely and efficient fashion.

Absent denying the motion to withdraw in its entirety, the Debtors urge this Court to withdraw reference only with respect to the ultimate issue of liability, and to maintain at the bankruptcy court the issues involving the estimation and classification of the United States' Claim.

## III. *Withdrawal of Reference*

The United States moves for withdrawal of reference to the bankruptcy court pursuant to 28 U.S.C. § 157(d), which provides:

The district court *may* withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party for cause shown. The district court *shall*, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

(Emphasis added).

In creating a distinction between circumstances where the district court "may" and "shall" act, Congress has provided for both permissive and mandatory withdrawal of reference. Legislative history of the statute, and its clear and unambiguous language indicate that "shall" is mandatory language, and should not be construed as the permissive "may." *See In re Combustion Equipment Associates, Inc. v. U.S. Environmental Protection Agency*, 67 B.R. 709, 711 (S.D.N.Y.1986), *aff'd*, 838 F.2d 35 (2d Cir.1988). Although the United States relies on both grounds for withdrawal, as demonstrated below, consideration of the conditions warranting mandatory withdrawal proves to be dispositive of the present case.

Section 157(d) serves a dual and interrelated purpose. It serves to insulate the 1984 bankruptcy legislation from constitutional attack, while according separate treatment to certain types of adversary proceedings. *See In re Combustion*, 67 B.R. at 711; 1 COLLIER ON BANKRUPTCY, ¶ 3.01 (15th ed. 1990) at 62. In 1984, Congress amended the 1978 Bankruptcy Act in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Constitutional concerns surrounding the grant of encompassing jurisdiction to non-Article III judges crystallized in *Marathon*, where the Court concluded that:

[Section] 241(a) of the Bankruptcy Act of 1978 has impermissibly removed most, if not all, of "the essential attributes of the judicial power" from the Art. III district court, and has vested those attributes in a non-Art. III adjunct. Such a grant of jurisdiction cannot be sustained as an

exercise of Congress' power to create adjuncts to Art. III courts.

*Id.* at 87, 102 S.Ct. at 2880.

■ Judicial derivation of the type of cases that warrant mandatory withdrawal, while informed by the dictates of *Marathon,* has also attempted to serve the purposes underlying Congress' creation of bankruptcy courts. Bankruptcy courts provide the expertise and efficiency intended by Congress in adjudication of bankruptcy matters, and, as a result, withdrawal can not be based on "speculation about ... issues which may or may not arise and may or may not be germane to resolution" of the proceedings. *In re White Motor Corp.,* 42 B.R. 693, 705 (N.D.Ohio 1984). To allow withdrawal upon mere speculation would be to create "an escape hatch through which most bankruptcy matters will be removed to the district court." *See In re Chateaugay Corp.,* 86 B.R. 33, 36 (S.D.N.Y.1987) (citing remarks of Rep. Kramer, 130 Cong.Rec. H1849–50 (daily ed. March 21, 1984)).

■ As a result, courts have generally held that a mandatory withdrawal of reference is warranted where "substantial and material consideration" of federal statutes other than the Bankruptcy Code is "necessary" to the resolution of a case or proceeding. *See In re Johns–Manville Corp.,* 63 B.R. 600, 602 (S.D.N.Y.1986); *In re Combustion* 67 B.R. at 711; *In re White,* 42 B.R. at 703, 705; 1 COLLIER, ¶ 3.01 at 67. Withdrawal of reference is not warranted, however, where it is a question of "straight forward application of a federal statute to a particular set of facts." *In re Johns–Manville,* 63 B.R. at 602. Section 157(d) applies to "core" and "non-core" bankruptcy proceedings, alike. *See New York v. Exxon Corp.,* 932 F.2d 1020, 1026 (2nd Cir.1991). This Court's holding, in *Sibarium v. NCNB Texas Nat'l Bank,* echoes this prevailing judicial approach,

[A] party making a timely motion for mandatory withdrawal must establish that the proceeding involves a "substantial and material" question of both Title 11 and non-Bankruptcy Code federal law and that the non-Code federal law has more than a *de minimis* effect on interstate commerce.

107 B.R. 108, 111 (N.D.Tex.1989).

■ In view of the circumstances generally warranting mandatory withdrawal, outlined above, the parties' present claims are reduced primarily to the following threshold inquiry: Whether the United States' Proof of Claim, and all debtors' responses to such claim entail "substantial and material" consideration of CERCLA and other federal environmental regulation for their resolution? To this end, this Court recognizes at the outset that CERCLA is a statute "rooted in the commerce clause" and is precisely "the type of law ... Congress had in mind when it enacted the statutory withdrawal provision." *United States v. Ilco,* 48 B.R. 1016, 1021 (N.D.Ala.1985).

Due to the relatively recent origin of the environmental legislation, the contours of interaction between CERCLA and the Code have of yet not been fully explored, and moreover a potential for conflict rests in their interaction[5]. *See In re Combustion Equipment Associates, Inc.,* 838 F.2d 35 (2d Cir.1988).

The conflict begins at a basic level, since the goal of CERCLA—cleaning up toxic waste sites promptly and holding liable those responsible for the pollution—is at odds with the premise of bankruptcy, which to allow debtors a fresh start by freeing them of liability. The two statutes also differ in their timing. To foster rapid cleanup, Congress embraced a policy of delaying litigation about cleanup costs until after the cleanup. Thus, under CERCLA, liability is not assessed until after the EPA has investigated a

---

**5.** In a most recent case, *In re Chateaugay Corp. et al.,* 944 F.2d 997, 1006 (2nd Cir.1991), the Court began addressing some of these conflicts involving dischargeability, administrative status and estimation of CERCLA claims. However, *In re Chateaugay Corp.* does not allow for the

type of "straight forward application" of a federal statute, other than the Code, by a bankruptcy court which is generally excluded from mandatory withdrawal. *See In re Johns–Manville,* 63 B.R. at 602.

site, decided what remedial measures are necessary, and determined which potentially responsible persons will bear the costs.

*Id.* at 37.

Any exploration of these conflicts by necessity implicates the category of cases that require consideration of both title 11 and CERCLA.

Some bankruptcy courts have engaged in a consideration of matters involving CERCLA without explicitly determining whether a bankruptcy court could hear such matters. *See, e.g., In re Jensen,* 127 B.R. 27 (9th Cir.BAP 1991); *In re Hemingway Transport, Inc.,* 108 B.R. 378 (Bankr. D.Mass.1989). *See also Interface, supra,* at 643. However, in all bankruptcy cases involving consideration of CERCLA where at least one party has moved for withdrawal of reference pursuant to section 157(d), mandatory withdrawal has been granted. *See American Tel. & Tel. Co. v. Chateaugay Corp.,* 88 B.R. 581 (S.D.N.Y.1988) (Resolution of when a CERCLA claim arises for bankruptcy purposes requires mandatory withdrawal, in that it is an open question that entails analysis of competing policies embodied in CERCLA and the Bankruptcy Code); *In re Combustion,* 67 B.R. at 713 (Determination of whether bankruptcy confirmation discharged potential CERCLA liability mandates withdrawal); *In re Johns–Manville,* 63 B.R. at 602–03 (Determination of whether CERCLA causes of action are barred by automatic stay mandates withdrawal). *See also Interface, supra,* at 643.

In view of such precedent, the determinations surrounding the Proof of Claim, as outlined in detail at the outset of this opinion, are testimony to the "substantial and material consideration" of both CERCLA and the Code necessary to their resolution. When a CERCLA claim arises, dischargeability of claim, estimation of claim, standard of liability, and priority of claim in bankruptcy proceedings are examples of such determinations. Pursuant to Section 157(d), this Court finds that such "substantial and material consideration" mandate withdrawal of reference in the present case.

■ In so finding, the Court rejects Debtors' claim that estimation and classification phases of the Proof of Claim involve "purely" bankruptcy law, and thus should remain at the bankruptcy court. Apart from the fact that the Debtors cite to no precedent where such an incision has proved to be practical in bankruptcy cases involving CERCLA, the Court in *Exxon* expressly rejected such a possibility,

> Even if the bankruptcy court considered [the district court's] liability finding to be *res judicata,* his determination as to the amount of damages and the availability of affirmative defenses has yet to be made. These questions are likely to require further interpretation of CERCLA.... Resolution of these and other questions ... would likely require a withdrawal from the bankruptcy court to the district court under 28 U.S.C. § 157(d).

932 F.2d at 1026.

Finally, the Court turns to Debtors' contention that removal of reference will work against the interests of "uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and judicial economy." Debtors' Opposition at 11. Like many others facing a similar situation, this Court appreciates that application of "the principles governing mandatory withdrawal ... to the particular circumstances of a given case requires that the court choose between two legitimate competing concerns." *American Tel. & Tel.,* 88 B.R. at 584. On the one hand, the Debtors prefer to have all proceedings that may affect their plan of reorganization resolved expeditiously before a single court familiar with the debtor's bankruptcy. On the other hand, EPA and DOI assert an interest in the Debtors that depends on CERCLA for its resolution. Particularly in view of the many unresolved issues surrounding the intersection of CERCLA and the Code, the present case meets Section 157(d)'s standard for mandatory withdrawal of reference as interpreted above.

### IV. *Conclusion*

For the foregoing reasons, the United States' motion for withdrawal of reference to the bankruptcy court is GRANTED.

SO ORDERED.