### In re KUHLMAN DIECASTING COMPANY, Debtor.

No. 92–436–RDR.
Bankruptcy No. 90–42346–11.

United States District Court, D. Kansas.

March 22, 1993.

Michael F. Flanagan of Polsinelli, White, Vardeman & Shalton, Overland Park, KS, for debtor.

Samuel D. Blesi of the Environmental Enforcement Section of the U.S. Dept. of Justice for the U.S. on behalf of the Environmental Protection Agency.

Frank Wendt of Slagle, Bernard & Gorman, Kansas City, MO, for Circle Business Credit, Inc.

Ronald S. Weiss and Timothy C. Pittman of Berman, DeLeve, Kuchan & Chapman, Kansas City, MO, for the Official Unsecured Creditors' Committee.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

This matter is presently before the court upon a recommendation from the bankruptcy court on a motion for mandatory withdrawal filed by the United States on behalf of the Environmental Protection Agency (EPA). Having carefully reviewed the bankruptcy court's memorandum opinion, this court is now prepared to rule.

Debtor Kuhlman Diecasting Company filed a Chapter 11 bankruptcy petition on November 29, 1990. Following a fire at the debtor's facility in Stanley, Kansas on April 19, 1991, the EPA inspected the site and found hazardous wastes. On April 23, 1991, the EPA began a response action at the site under § 104(a) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9604(a), and the National Contingency Plan, 40 C.F.R. § 300.65. After incurring costs in its assessment and cleanup activities, the EPA filed an application for reimbursement of administrative expenses in the Chapter 11 case on September 30, 1991. The application requested reimbursement of $1,435,000.00. An objection to this application was subsequently filed by the Credi-

tors' Committee. The EPA responded with a motion for withdrawal of reference pursuant to 28 U.S.C. § 157(d). The bankruptcy court filed its recommendation on the motion on December 3, 1992.

In its memorandum opinion, the bankruptcy court noted that a split in the courts has developed on the appropriate interpretation of the provisions of the mandatory withdrawal statute. The bankruptcy court recommended that this court withdraw this matter for the purpose of (1) announcing which standard applies under the mandatory withdrawal statute, and (2) whether the interpretations of CERCLA required by the EPA's application for expenses should be made by the district court or the bankruptcy court.

This court shall follow the bankruptcy court's recommendation and withdraw this matter to consider the aforementioned questions. We begin by consideration of the mandatory withdrawal statute, 28 U.S.C. § 157(d). Section 157(d) provides as follows:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

In construing this language, courts have reached different results as to its true meaning. The seminal case on the issue is *In re White Motor Corp.*, 42 B.R. 693 (N.D.Ohio 1984), in which the court carefully examined the legislative history of the statute and determined that Congress did not intend for § 157(d) to become "an escape hatch through which most bankruptcy matters will be removed to the district court." *Id.* at 704. The court concluded that withdrawal is mandatory "only if th[e court] ... can make an affirmative determination that resolution of the claims will require substantial and material consider-

ation of those non-Code statutes" which have more than a "de minimis" impact on interstate commerce. *Id.* at 705. This decision has been followed by the majority of the courts that have considered the issue. *See, e.g., In re Lenard,* 124 B.R. 101 (D.Colo.1991); *In re St. Mary Hospital,* 115 B.R. 495 (E.D.Pa.1990); *Hatzel & Buehler Inc. v. Orange & Rockland Utilities, Inc.,* 107 B.R. 34 (D.Del.1989); *In re American Community Services, Inc.,* 86 B.R. 681 (D.Utah 1988); *Boricua Motors Corp. v. Tamachi, Inc.,* 76 B.R. 891 (D.P.R. 1987); *In re Johns–Manville Corp.,* 63 B.R. 600 (S.D.N.Y.1986).

Other courts, however, have determined that the statute should be read literally, and mandatory withdrawal should be required when resolution of a proceeding requires consideration of both bankruptcy and non-bankruptcy law. *In re IO Telecommunications, Inc.,* 70 B.R. 742 (N.D.Ill.1987); *In re Anthony Tammaro, Inc.,* 56 B.R. 999 (Bankr.E.D.Mich.1986).

After reviewing the cases on both sides of the issue, we are persuaded that the view adopted in *White Motor Corp.* is the correct one. The opposing interpretation of § 157(d) "would effectively defeat the attempts of the Code to rationalize bankruptcy litigation." *In re Johns–Manville Corp.,* 63 B.R. at 602. As stated by the court in *In re Chadborne,* 100 B.R. 663, 667 (S.D.N.Y.1989):

> A holding that a withdrawal is mandatory whenever a non-Code provision is considered would frustrate the ability of the bankruptcy courts to resolve debtor-creditor issues, because it would require withdrawal of any issue involving even de minimis consideration of a statute other than the Code. There is no indication that this was the intent of either the Court in *Northern Pipeline [Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ] or the Congress with the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984. In fact, the legislative history as recounted in *White* reflects Congress' intent to leave questions involving the bankruptcy

court's expertise within its jurisdiction to the greatest extent possible.

In sum, we find that withdrawal is reserved only for those cases where substantial and material consideration of the non-bankruptcy federal statutes is necessary for the resolution of the proceeding.

With the adoption of this standard, the court finds it necessary to have the parties present briefs on the impact of this decision on the precise issues being raised under CERCLA. It appears from the recommendation of the bankruptcy court that confusion exists as to the nature of the claims being asserted under CERCLA. The requested briefs should provide the court with the necessary background to determine the merits of EPA's motion for withdrawal. The parties shall submit their briefs within twenty days of the date of this order. The parties shall have ten days after the filing of the initial briefs in which to file a response.

**IT IS THEREFORE ORDERED** that the parties file briefs on the issue of whether the EPA's motion to withdraw should be granted or denied. These briefs shall be due within twenty days of the date of this order. Responsive briefs shall be due ten days after the filing of the initial briefs.

**IT IS SO ORDERED.**

### MEMORANDUM OPINION

JOHN T. FLANNIGAN, Bankruptcy Judge.

In this proceeding, the United States of America, on behalf of its agency, the Environmental Protection Agency ("EPA"), asks that its Application for Reimbursement of Administrative Expenses be withdrawn from the Bankruptcy Court to the District Court, principally under the second sentence of 28 U.S.C. § 157(d)—mandatory withdrawal. This opinion will satisfy the directive of D.Kan.Rule 706 that a written recommendation of the Bankruptcy Judge be prepared for transmission to the Clerk of the District Court.

The debtor, Kuhlman Diecasting Company, appears by its attorney, Michael F. Flanagan of Polsinelli, White, Vardeman &

Shalton, Overland Park, Kansas. The United States of America, on behalf of its agency, the EPA, appears by its attorney, Samuel D. Blesi of the Environmental Enforcement Section of the United States Department of Justice. Circle Business Credit, Inc. ("Circle") appears by its attorney, Frank Wendt of Slagle, Bernard & Gorman, Kansas City, Missouri. The Official Unsecured Creditors' Committee ("Creditors' Committee" or "Committee") appears by its attorneys, Ronald S. Weiss and Timothy C. Pittman of Berman, DeLeve, Kuchan & Chapman, Kansas City, Missouri.

BACKGROUND

On November 29, 1990, Kuhlman Diecasting Company filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

Since the early 1960s, Kuhlman had owned and operated a diecasting and metal manufacturing facility in Stanley, Kansas, producing aluminum alloy, zinc and plastic diecast products for commercial and industrial customers.

A fire broke out at the debtor's Stanley, Kansas, facility on April 19, 1991. The Kansas Department of Health and Environment ("KDHE") investigated and discovered numerous drums bearing hazardous waste labels. At the request of the KDHE, the EPA's Emergency Planning and Response Branch performed a preliminary inspection of the site. The KDHE later requested the EPA's assistance in securing cleanup.

Among the hazardous substances the EPA found at the site were electroplating wastewater treatment sludge, copper cyanide, copper cyanide plating sludge, chromic acid, hydrochloric acid, nitric acid, cupric acid, calcium hypochlorite, and various other corrosives and electroplating stripping and cleaning solutions and solvents. High concentrations of chromium, copper, nickel, and zinc were found in the soils and sediments located near the sludge and polishing ponds.

On April 23, 1991, the EPA began a response action at the site under § 104(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), 42 U.S.C. § 9604(a), and the National Contingency Plan, 40 C.F.R. § 300.65. The EPA discovered between 800 and 900 containers and drums filled with substances defined as "hazardous substances" under § 101(14) of CERCLA, 42 U.S.C. § 9601(14), 40 C.F.R. § 1116.4. Some of the drums were open, allowing release of hazardous vapors and increasing the chance that their contents would be spilled. Pools of electroplating solution were found on the floor of the main building. Based on the assessment of the EPA's On-Scene Coordinator, a removal action was deemed necessary in order to protect the public health and welfare and the environment.

Having incurred costs in its assessment and removal activities, the EPA, through the United States, filed an Application for Reimbursement of Administrative Expenses in the Chapter 11 case on September 30, 1991. The Application requested reimbursement of $1,435,000.00. Since the EPA response actions are ongoing, the costs continue to increase.

On October 23, 1991, the Creditors' Committee filed its objection to the United States' Application.[1] The Committee based its objection on the contention that the EPA had to show that its response costs were "necessary to comply with the provisions of CERCLA and the National Contingency Plan." (Objection of Official Unsecured Creditors' Committee to Application by the United States of America for Reimbursement of Administrative Expenses, page 2.) It further contended that the

---

1. On October 23, 1991, Circle Business Credit, Inc. also objected to the United States' Application. Circle held an administrative expense claim of $20,278.56. It only objected to the priority of the United States' payment prior to its own claim. The Order Confirming Debtor's First Amended Plan of Liquidation filed March 11, 1992, specifically authorized payment to Circle Business Credit, Inc. prior to payment to the EPA. Since the Plan provides Circle with the priority it desired, its objection is no longer at issue.

EPA's expenditures were not actual and necessary costs of preserving the estate and therefore were not entitled to priority under 11 U.S.C. § 503(b)(1). The Creditors' Committee also filed a Motion For Pretrial Conference and Special Trial Setting requesting a full evidentiary hearing on the merits of the United States' Application.

The United States responded by filing a Motion for Withdrawal of Reference Pursuant to 28 U.S.C. § 157(d) on November 4, 1991, supported by a memorandum of law. In addition, it filed a Motion for Stay of Bankruptcy Proceedings with Respect to United States Motion for Reimbursement of Administrative Expenses on the same date, November 4, 1991.

Then on November 12, 1991, the debtor filed what it captioned: "Comment to Motion for Stay of Bankruptcy Proceedings with Respect to United States Motion for Reimbursement of Administrative Expenses." In this document, the debtor consented to the stay of proceedings on the United States' application for administrative expenses, but asked the Court to "deny the request of any creditor or party in interest to stay any proceedings before this Court which are unrelated to the EPA's Application...." (Debtor's Comment to Motion for Stay of Bankruptcy Proceedings with Respect to United States Motion for Reimbursement of Administrative Expenses, page 3.)

At a hearing held November 19, 1991, the Court stayed proceedings on the United States' application for administrative expenses pending resolution of the withdrawal motion, but allowed all other proceedings aimed at confirmation of the Plan to go forward.

After hearings held on October 1, 1991, and January 24, 1992, the Court confirmed a Plan of Liquidation dated July 23, 1991, and signed an Order of Confirmation that was filed March 11, 1992.

While the Creditors' Committee objected to the United States' application for administrative expense status and filed a Motion For Pretrial Conference and Special Trial Setting requesting a full evidentiary hearing on the merits of the United States' Application, neither it nor any other party objected to the United States' motion for withdrawal of reference of the administrative expense application. This leaves the Court without a brief to assist it in deciding the issues presented by the motion to withdraw reference. The only opposition to withdrawal of reference is found in the Committee's objection to the administrative expense claim. As previously stated, that objection is that there is no showing that the EPA's response costs were "necessary to comply with the provisions of CERCLA and the National Contingency Plan."

## DISCUSSION

Discretionary and mandatory withdrawal of reference of cases and proceedings to the district court are controlled by 28 U.S.C. § 157(d):

> The district court *may* withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court *shall*, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce. (Emphasis added.)

The United States maintains that the District Court must withdraw reference of this proceeding because the mandatory withdrawal of reference provision, 28 U.S.C. § 157(d), governs. It posits that although this is a core proceeding in bankruptcy (an administrative expense claim allowance proceeding), its resolution requires substantial and material consideration of both title 11 and CERCLA, a federal statute regulating organizations or activities affecting interstate commerce.

Alternatively, the United States asserts that if the mandatory provision of 28 U.S.C. § 157(d) does not govern, its discretionary provision justifies withdrawal of reference of the proceeding.

In addition to the statutory reference above, there is one Federal Rule of Bankruptcy Procedure and one District of Kansas Rule that must be consulted when the subject is withdrawal of reference.

Fed.R.Bankr.P. 5011(a) states, "A motion for withdrawal of a case or proceeding shall be heard by a district judge." Perhaps this explains why the United States' Motion for Withdrawal is captioned in the United States District Court for the District of Kansas. However, the motion bears the file stamp of the Clerk of the United States Court of Bankruptcy dated November 4, 1991.

D.Kan.Rule 706 prescribes a procedure for transfer by the bankruptcy judge of particular proceedings for hearing and trial by a district judge. The United States makes no mention of this rule in its memorandum supporting withdrawal of reference.

This Court has previously commented on the split of authority over whether a motion to withdraw reference must be addressed directly by the district court. *In re Franklin Savings Corporation*, 133 B.R. 154 (Bankr.Kan.1991). In that case, this Court held that "until the Kansas District Court decides to follow those courts bypassing a bankruptcy court transfer procedure, this Court will follow District Court Rule 706." *Id.* at 158. Accordingly, D.Kan. Rule 706 directs that "[a] particular proceeding commenced in or removed to the Bankruptcy Court shall be transferred to the District Court for hearing and trial by a district judge only in accordance with the procedure below." After stating the various grounds to support a motion for transfer, the rule provides: "The motion for transfer, together with a written recommendation of a bankruptcy judge, shall be transmitted by the clerk of the Bankruptcy Court to the clerk of the District Court." This opinion will satisfy the requirement of a written recommendation of a bankruptcy judge.

In *Burger King Corp. v. B–K of Kansas, Inc.*, 64 B.R. 728, 731 (D.Kan.1986), although finding it unnecessary on the facts to choose between them, Judge Saf-fels recognized two theories of interpretation of the mandatory withdrawal statute, 28 U.S.C. § 157(d):

One theory suggests that withdrawal is mandatory when resolution of the claims will require substantial and material consideration of non-bankruptcy code statutes. *See In re White Motor Corp.*, 42 B.R. 693, 705 (N.D.Ohio 1984). The second theory holds that the statute should be literally translated, *i.e.*, mandatory withdrawal is required only when resolution of the proceeding requires consideration of *both* title 11 and non-Code federal law. *See In re Anthony Tammaro, Inc.*, 56 B.R. at 1004.

Assuming (as the United States seems to do) that the first theory applies here, on this record it is difficult to determine whether a substantial and material consideration of CERCLA is needed to decide the allowability of the United States' administrative expense claim. On the surface, only post-petition cleanup costs appear to be involved. It may be that a simple reading of the relevant CERCLA provisions is all that is needed to satisfy this Court (or any court) that the response costs were "necessary to comply with the provisions of CERCLA and the National Contingency Plan." While the "substantial and material consideration" standard would probably allow this Court to interpret and apply straightforward CERCLA provisions, the United States and the Creditors' Committee have failed to provide adequate information to allow the Court to assess the complexity of the precise issues presented under CERCLA.

The Creditors' Committee may be raising more complicated questions than whether there has been compliance with simple CERCLA formalities and what the amount of the EPA's post-petition cleanup expenses is. It is difficult to say what issues will be raised by the Committee at the evidentiary hearing it requested on the allowability of United States' administrative expense claim.

In *In re Johns–Manville Corp.*, 63 B.R. 600 (S.D.N.Y.1986), the debtor was the owner of a landfill. It filed for Chapter 11

**316**

relief on August 26, 1982. In March 1984, the United States Center for Disease Control determined that the landfill posed a health hazard. The EPA, acting in response under CERCLA, incurred costs in excess of $1.1 million. The New York District Court held that to answer whether the claims against Manville arose before or after it filed under Chapter 11 required the court to make a substantial and material interpretation of CERCLA.

Although the Creditor's Committee has not yet challenged the United States' claim as pre-petition rather than post-petition, it has filed a Motion For Pretrial Conference and Special Trial Setting requesting a full evidentiary hearing on the merits of the United States' Application for Reimbursement of Administrative Expenses. If the "pre-petition claim" versus "administrative expense" question should surface at the requested hearing, the district court would be the proper court to decide it under the authority of *In re Johns–Manville Corp. Id.*

Since this Court cannot determine what precise issues are being raised under CERCLA, nor whether it must give substantial and material consideration to CERCLA to decide the allowability of the United States' administrative expense claim, the Court recommends that the District Court withdraw the proceeding to announce which standard applies under the mandatory withdrawal statute [2] and whether the interpretations of CERCLA required in this proceeding should be made by the District Court or by the Bankruptcy Court.

Accordingly, the Bankruptcy Clerk is directed to transmit this written recommendation to the Clerk of the District Court in accordance with D.Kan.Rule 706 forthwith.

IT IS SO ORDERED.

Dated at Topeka, Kansas, this 3rd day of December, 1992.

---

**2.** A search of Westlaw reveals no 10th Circuit case announcing the standard applicable for determining mandatory withdrawal under 28 U.S.C. § 157(d).