In re **CHADBORNE INDUSTRIES, LTD.**, Debtor.

John S. **PEREIRA**, as Chapter 7 Trustee of Chadborne Industries, Ltd., Plaintiff,

v.

NEW YORK HOTEL AND MOTEL TRADES COUNCIL and the Office of the Impartial Chairman, Defendant.

Vito **PITTA**, as President of the New York Hotel and Motel Trades Council, AFL–CIO, Counter–Claimant,

v.

John S. **PEREIRA**, as Chapter 7 Trustee of Chadborne Industries, Ltd., Counter–Defendant–Plaintiff.

Bankruptcy No. 85B 11169(PBA).
Adv. No. 89–5148A.
No. 89 Civ. 1264(MEL).

United States District Court, S.D. New York.

June 5, 1989.

LeBoeuf, Lamb, Leiby & MacRae, New York City, for trustee; John P. Campo, of counsel.

Shea & Gould, New York City, for New York Hotel and Motel Trades Counsel, AFL–CIO; Vincent F. Pitta, Barry N. Saltzman, Glenn E. Siegel, Eve I. Klein, of counsel.

LASKER, District Judge.

The New York Hotel and Motel Trades Council and the New York Hotel and Motel Trades Council Funds ("the union") move pursuant to 28 U.S.C. § 157(d) to withdraw the reference to the bankruptcy court of the complaint and counterclaims underlying the adversary proceeding between the union and John S. Pereira, in his capacity as the Chapter 7 trustee of Chadborne Industries, Ltd. ("the trustee"). The union seeks withdrawal of its motion to compel arbitration of claims charging the trustee with failure to comply with his duties as an alleged "successor employer" that arise under the National Labor Relations Act ("NLRA") and the Labor Management Relations Act ("LMRA") and of the trustee's motion to stay arbitration.

The union contends that substantial and material consideration of federal labor law will be necessary to determine if the trustee was a successor employer and thus bound to arbitrate with the trustee or comply with the terms of the collective bargaining agreement, and that, as a result, withdrawal of the reference is mandated. However, the trustee persuasively argues that resolution of those issues will not require significant interpretation of labor law, but only its straightforward application. Accordingly, the motion to withdraw the reference is denied.

## I.

The union represents employees working at the Holland Hotel ("the Hotel"), which the trustee began operating on December 28, 1987 pursuant to an order of the bankruptcy court. Based on a finding that the trustee's operation of the Hotel would be in "the best interests of the estate and consistent with the orderly liquidation of the estate," the court authorized the trustee to operate "the business of the Holland Hotel for a period not to exceed 120 days except upon further order of this court."

Prior to that order, Pan Trading Corporation, S.A. ("Pan Trading") had operated the Hotel, pursuant to a lease with Chadborne Industries, Ltd. ("Chadborne") signed in 1984.[1] On July 19, 1985, Chadborne, the

---

**1.** The two are presently embroiled in litigation arising from Chadborne's suit to set aside the lease as a fraudulent conveyance.

owner of the property, filed a petition for relief under Chapter 7 of the bankruptcy code; ten days later, a trustee was appointed to manage the debtor company. On August 25, 1987, Pan Trading filed a petition for relief under Chapter 11 of the bankruptcy code; on December 28, 1987, the bankruptcy court converted the Pan Trading bankruptcy to one under Chapter 7 and ordered "that any Chapter 7 trustee [of Pan Trading] appointed shall not be authorized to operate the business of the debtor." On the same day, as stated above, the bankruptcy court authorized the Chadborne trustee to operate the business of the Hotel for a limited duration. On March, 23, 1988, the trustee entered into a purchase option agreement with the City of New York ("the City"), with the approval of the bankruptcy court, which gave the City an irrevocable option to purchase the Hotel. Simultaneously, the bankruptcy court extended the trustee's authority to operate the Hotel until August 31, 1988 "or such earlier date as the Hotel may become vacant" and authorized the trustee to cease the Hotel's operation no later than August 31, 1988. By order of the bankruptcy court, the Hotel was closed and the temporary authority of the trustee to operate the Hotel terminated on September 26, 1988.

Beginning in 1985, Pan Trading had operated the Hotel pursuant to a collective bargaining agreement. In addition to specifying the terms of employment, the agreement provided for arbitration of disputes concerning its terms. The Chadborne trustee, when it began operating the Hotel pursuant to the court's December order, did so in the same manner as had Pan Trading: It retained the employees of Pan Trading at the same rates, in the same position; continued to withhold union dues from salaries; and provided vacation, sick leave, and other benefits consistent with the collective bargaining agreement. It did not notify the union or the employees that it would or would not adopt the collective

bargaining agreement. Beginning in March, 1988 and continuing through August, 1988, the trustee dismissed the Hotel employees.

In August, 1988, the union demanded that the trustee make severance payments and that he remit union dues, as well as contributions to the pension and welfare funds, in accordance with the terms of the agreement. The trustee declined the requests. On October 7, 1988, the union filed and served an amended demand for arbitration of its dispute with the trustee, alleging that the trustee, by virtue of having relationships with the Hotel employees that differed little from those with the predecessor employer, was a successor employer of Pan Trading and thus required to abide by the terms of the collective bargaining agreement.

The hearing, originally scheduled for December 7, 1988, was adjourned until February 1, 1989. On January 19, 1989, the trustee moved to enjoin the arbitration, on the ground that the dispute should be resolved in the bankruptcy court. The union's answer included a request that the stay be denied and arbitration compelled pursuant to § 301 of the LMRA, 29 U.S.C. § 185.

## II.

The motion before this court to withdraw from the bankruptcy court the adversary proceeding between the union and the trustee arises under 28 U.S.C. § 157(d),[2] which states:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regu-

---

**2.** Section 157(d) was adopted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 in response to *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 87, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982), in which the Court held that the Bankruptcy Act of 1978 impermissibly removed from the Article III courts and vested in a non-Article III adjunct "most, if not all, of the 'the essential attributes of the judicial power.'"

lating organizations or activities affecting interstate commerce.

Both parties agree that the questions presented by the adversary proceeding involve considerations of bankruptcy and labor law. However, the parties dispute the standard required under § 157(d) to compel withdrawal of the reference from the bankruptcy court and whether that standard has been satisfied in this case.

### A.

■ The union seems to argue both (1) that withdrawal is mandatory in any proceeding that involves consideration of bankruptcy and labor law and (2) that withdrawal is mandatory only when resolution of the proceeding requires substantial and material consideration of a federal law other than bankruptcy. For the reasons discussed below, I conclude that, as the trustee contends, the latter standard governs.

In support of its argument that § 157(d) requires withdrawal of the adversary proceeding because it involves questions of labor law, the union cites statements of Representative Kastenmeier. During House debate, when asked what circumstances were to be covered by the language "activities affecting interstate commerce," Representative Kastenmeier stated:

This language is to be construed narrowly. It would, for example, mean related cases which may require consideration of both Title 11 issues and other Federal laws including cases involving the National Labor Relations Act, civil rights

laws, Securities and Exchange Act of 1934 and similar laws.

130 Cong.Rec. H1849–50 (daily ed. Mar. 21, 1984). At least one court, relying on Kastenmeier's statement, has stated in dicta that withdrawal is mandatory when questions of labor law must be considered.[3] *See In re Blackman,* 55 B.R. 437, 449 (Bank.D.C.1985) (characterizing issues arising under the NLRA, the Securities and Exchange Act, and the civil rights laws as "three examples of federal interstate-commerce laws intended to trigger mandatory withdrawal"). Similarly, in *In re Baker,* 86 B.R. 234, 238 (D.Co.1988), the court granted a motion to withdraw a reference of an adversary proceeding relating to the ability to discharge a debt arising from an alleged violation of 42 U.S.C. § 1983. Relying in part on Representative Kastenmeier's reference to civil rights laws, the court concluded that withdrawal of the reference was mandatory.

In spite of these decisions, however, most courts have not accorded Representative Kastenmeier's statement the weight given it in *Blackman.* Instead, they have, consistent with the trustee's argument, decided whether withdrawal of the reference is required by determining the significance of the non-Code issue to the resolution of the question presented. For example, in *In re White Motor Corp.,* 42 B.R. 693 (N.D. Ohio 1984), the court, after considering the pre-enactment statement of Senator De-Concini[4] as well as that of Representative Kastenmeier, concluded that withdrawal

---

**3.** The union represents that other courts have withdrawn references where questions of labor law arise. Although it is true that, in *In re Continental Airlines Corp.,* 50 B.R. 342 (S.D.Tex. 1985), *aff'd,* 790 F.2d 35 (5th Cir.1986), the court withdrew the reference where the question before the court involved a dispute arising under the Railway Labor Act, it did not state that it was doing so because a question of labor law was involved. Instead, the court concluded that withdrawal was appropriate because the bankruptcy code had no application to the question presented and the bankruptcy court lacked particular legal and factual expertise.

**4.** DeConcini did not categorize those cases subject to mandatory withdrawal by the subject involved, but instead by the role of the non-bankruptcy issue in the case.

The district court should withdraw such proceedings only if the court determines that the assertion that other laws regulating organizations or activities affecting interstate commerce are in fact likely to be considered, and should not allow a party to use this provision to require withdrawal where such laws are not material to resolution of the proceeding. The district court should refuse the withdrawal if withdrawal would unduly delay administration of the case, considering the status of the case, the importance of the proceeding to the case, and the relative caseloads of the district court and bankruptcy judge.

*Id.* at 700 (quoting 130 Cong.Rec. S6081 (daily ed. June 19, 1984)).

was mandatory only where proceedings before the bankruptcy court could not be determined without "substantial and material consideration" of non-Code provisions. *Id.* at 704. "Section 157(d) must therefore be read to require withdrawal not simply whenever non-Code federal statutes will be *considered* but rather only when such consideration is necessary for the *resolution* of a case or proceeding." *Id.* at 703 (emphasis in original). The *White* court denied the motion to withdraw the reference, although the moving party had shown that many questions were likely to arise in the next round of litigation involving considerations of federal tax law and the Employee Retirement Income Security Act of 1974 ("ERISA"). "[T]he Amendments as a whole and § 157(d) in particular must be read to require withdrawal of the proceedings from the Bankruptcy Court only if this Court can make an affirmative determination that resolution of the claims will require substantial and material consideration of those non-Code statutes." *Id.* at 705.

Courts in this district have adopted *White*'s construction of § 157(d). In *In re Combustion Equip. Assoc., Inc.*, 67 B.R. 709 (S.D.N.Y.1986), the underlying adversary proceeding involved the debtor's challenge to a claim asserted against it by the Environmental Protection Agency and its state equivalent for liability arising under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). Judge Sand concluded that the legislative history of § 157(d) indicated that the section was not to be construed literally to require withdrawal whenever a non-Code provision was considered:

> The legislative history of section 157(d) and the case law interpreting it reveal that withdrawal is mandatory only when "substantial and material consideration" of federal statutes other than the Bankruptcy Code "is necessary for the *resolution* of a case or proceeding."

*Id.* at 711 (quoting *In re White Motor Corp.*, 42 B.R. at 703, 704) (emphasis in original). Applying this standard, the court granted EPA's motion to withdraw the reference on the ground that determin-ing when the causes of action arose under CERCLA, and thus whether there was properly a claim against the debtor, would require "substantial and material consideration of CERCLA, a federal statute affecting interstate commerce, in tandem with consideration of the Bankruptcy Code." *Id.* at 713. *See also In re Chateaugay Corp.*, 86 B.R. 33, 36–37 (S.D.N.Y.1987) (Sweet, J.) (holding withdrawal was mandatory where issues involved "substantial and material" consideration of non-Code federal statutes); *In re Johns–Manville Corp.*, 63 B.R. 600, 603 (S.D.N.Y.1986) (Leval, J.) (same). Moreover, "substantial and material consideration" of a statute has been interpreted to mean more than its straightforward application.

> It would seem incompatible with congressional intent to provide a rational structure for the assertion of bankruptcy claims to withdraw each case involving the straightforward application of a federal statute to a particular set of facts. It is issues requiring significant *interpretation* of federal laws that Congress would have intended to have decided by a district judge rather than a bankruptcy judge.

*In re Johns–Manville Corp.*, 63 B.R. at 602 (emphasis in original).

I agree with these decisions. A holding that a withdrawal is mandatory whenever a non-Code provision is considered would frustrate the ability of the bankruptcy courts to resolve debtor-creditor issues, because it would require withdrawal of any issue involving even de minimis consideration of a statute other than the Code. There is no indication that this was the intent of either the Court in *Northern Pipeline* or the Congress with the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984. In fact, the legislative history as recounted in *White* reflects Congress' intent to leave questions involving the bankruptcy court's expertise within its jurisdiction to the greatest extent possible.

Accordingly, the instant motion should be granted only if resolution of the issue

presented involves a substantial and material consideration of the federal labor laws.

### B.

■ The underlying adversary proceeding presents several issues, including: 1) Can the arbitration be stayed pursuant to the bankruptcy code or does it fall within the exception of 28 U.S.C. § 959, providing that a trustee may be sued without leave of the court with respect to acts taken in carrying on business connected with property? 2) Is the trustee a successor employer within the meaning of the NLRA? 3) Is the trustee required to arbitrate disputes with the union or abide by the terms of the collective bargaining agreement? Although distinct, these issues all depend on a determination whether the trustee is in fact a successor employer.[5]

The Supreme Court has most recently articulated the factors to be considered to determine whether an employer is a successor employer in *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 43, 107 S.Ct. 2225, 2236, 96 L.Ed.2d 22 (1987):

> [T]he focus is on whether there is "substantial continuity" between the enterprises. Under this approach, the [National Labor Relations] Board examines a number of factors: whether the business of both employers is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers.

(citations omitted). Moreover, the Court emphasized that "[i]n conducting the analysis, the Board keeps in mind the question whether 'those employees who have been retained will understandably view their job

situations as essentially unaltered.'" *Id.* *See also Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 184, 94 S.Ct. 414, 415, 38 L.Ed.2d 388 (1973) (affirming finding that company which purchased business was successor for purposes of NLRA, where "new employer ... has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations"); *NLRB v. Burns Int'l Sec. Services, Inc.*, 406 U.S. 272, 281, 92 S.Ct. 1571, 1579, 32 L.Ed.2d 61 (1972) (affirming order that new employer who hired majority of those employed by previous employer bound to bargain with union recently recognized in collective bargaining agreement); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 551, 84 S.Ct. 909, 915, 11 L.Ed.2d 898 (1964) (affirming holding that employer that acquired company through merger was required to arbitrate pursuant to collective bargaining agreement where, as was true in facts before court, the business entity remained the same after merger).

Neither party has cited and the court has not found any cases addressing the question presented in the case at hand, namely whether under the standard of *Fall River* and its predecessors a trustee who is authorized only to continue the business of the debtor until its liquidation, a period expected to be brief, is to be regarded as a "successor employer."[6] Of course, resolution of this question will require some consideration of labor law. However, the consideration will not be "substantial and material," because the question whether the trustee is a successor employer will turn on a straightforward application of the standard of *Fall River* to the facts of the case. The bankruptcy court, as the body that empowered the trustee to operate the busi-

---

5. Even the question of the propriety of a stay requires the court to decide whether the trustee was a successor employer, because only if he was a successor employer do the duties of 28 U.S.C. § 959 said to be violated arise.

6. The case cited by the union, *International Technical Products Corp.* 249 N.L.R.B. No. 183 (June 18, 1980), does not consider whether the trustee who was appointed to operate, wind

down, and conclude the business of a debtor company was or could be a successor employer. Instead, in *International,* the company that purchased the assets of the debtor company from the trustee admitted that it was a successor employer, but argued that any liability it might incur in that capacity was extinguished because it purchased the assets "free and clear of all liens and encumbrances."

ness, is in the best position to understand the scope and limits of the authority with which it endowed the trustee and thus whether the orders were intended to or in fact did establish the trustee as a successor. For example, the question whether the trustee "acquired substantial assets of its predecessor" within the meaning of *Golden State* depends for its resolution on the scope of the bankruptcy court's order and the authority permitted a trustee under the Code, not on substantial considerations of labor law. *But see In re Chateaugay Corp.*, 86 B.R. 33, 38 (S.D.N.Y.1987) (holding that decision whether claims for termination liability and due and unpaid contributions arising under ERISA arose before or after the bankruptcy petition was filed, as an issue of first impression, would require substantial and material consideration of non-Code provisions).

The question whether the trustee is a successor employee differs from those questions found to require significant interpretation of federal non-Code statutes and thus demand withdrawal. For example, in *In re Johns–Manville Corp.*, 63 B.R. 600 (S.D.N.Y.1986), the district court granted a motion to withdraw an adversary proceeding after concluding that significant interpretation of CERCLA was necessary to determine whether the claims arose before or after the debtor filed for bankruptcy. *See also In re Combustion Equip. Assoc., Inc.*, 67 B.R. 709, 713 (S.D.N.Y.1986) (concluding that "substantial consideration of CERCLA is essential to this determination of when a cause of action accrues under the act" and therefore withdrawal was mandatory). In contrast to the CERCLA question presented in *Johns–Manville* and *Combustion Equipment*, the NLRA issue involved in the adversary proceeding, namely the factors to be considered to determine if a new employer is a "successor," has a significant "judicial gloss." *Johns–Manville*, 63 B.R. at 602.

The recent case of *In re: Goodman*, 873 F.2d 598 (2d Cir.1989), does not compel a contrary result. In *Goodman*, the court held that the NLRB, rather than the bankruptcy court, had jurisdiction to determine whether an individual, whose debts had been previously discharged pursuant to Chapter 7 of the Bankruptcy Code, and his new company were successors of his earlier businesses. In the case at hand, however, it is not true as it was in *Goodman*, that "no bankruptcy issue hinges on the successorship determination." At 603. In *Goodman*, the successorship issue was no longer collateral to the bankruptcy proceedings once the bankruptcy court had determined that the individual debtor's discharge did not shield him from potential liability for later conduct as a successor employer. In the case at hand, the question whether the trustee is a successor employer is intertwined with, not independent of, an analysis of the scope of the trustee's authority. The very bankruptcy at issue, and thus the funds remaining for the creditors of the estate, depends on the successorship issue.

Accordingly, I conclude that, although resolution of the question whether the trustee is a "successor employer" will involve some consideration of labor as well as bankruptcy law, the labor law questions at issue are straightforward and do not require substantial and material consideration of the NLRA. It follows that it would be inappropriate to withdraw the reference. The considerations necessary for resolution of the other issues presented by the adversary proceeding need only be briefly addressed, because they clearly do not require withdrawal. If the trustee is found not to be a successor employer, no issues remain. If instead he is held to be a successor employer, there can be little doubt that the straightforward application of *Burns* and *Wiley* will require the trustee to arbitrate the claims. Moreover, at that point, the question of the applicability of the bankruptcy stay could then be readily resolved without substantial and material consideration of labor law, for if the trustee is a successor employer, it will be difficult to argue that his acts in that capacity were not taken to "carry[ ] on business connected with such property" within the meaning of 28 U.S.C. § 959. Finally, denial of the union's motion is consistent with preserving the structure for permitting the bankruptcy court to resolve an issue calling

**670**

for its expertise, but without encroaching on the duties entrusted to the federal courts by the constitution.

The union's motion to withdraw the reference is denied.

It is so ordered.