Roger G. **SEGAL, Chapter 11 Trustee for Bonneville Pacific Corporation, Bonneville Pacific Service Company, Inc. and Bonneville General Corporation, Plaintiffs,**

v.

**CALIFORNIA ENERGY DEVELOPMENT CORPORATION, Defendant.**

**Civ. No. 93–C–1072G.**

United States District Court, D. Utah, Central Division.

March 31, 1994.

---

Richard A. Rappaport and Vernon L. Hopkinson of Cohne, Rappaport & Segal, Salt Lake City, UT, for plaintiff Roger G. Segal, Chapter 11 Trustee for Bonneville Pacific Corp. (the "Trustee").

Cass C. Butler of Ballard Spahr Andrews & Ingersoll, Salt Lake City, UT, and Barry Wm. Levine of Dickstein, Shapiro & Morin, Washington, DC, for defendant CEDC.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the Court February 18, 1994, for purposes of a hearing on California Energy Development Corporation's ("CEDC") motion for withdrawal of reference of Adversary Proceeding Number 93PA–2495. Defendant CEDC was represented by Cass C. Butler of Ballard Spahr Andrews & Ingersoll and Barry Wm. Levine of Dickstein, Shapiro & Morin. Plaintiff Roger G. Segal, Chapter 11 Trustee for Bonneville Pacific Corporation (the "Trustee"), was represented by Richard A. Rappaport and Vernon L. Hopkinson of Cohne, Rappaport & Segal.

The Court took CEDC's motion under advisement. After considering the oral argument, pleadings, and memoranda on file, the Court renders its Memorandum Decision and Order.

## FACTUAL BACKGROUND

This dispute arises out of CEDC's purchase of Yuma Cogeneration Association (the "YCA Partnership"), a partnership which owned the right to develop a fifty megawatt power project in Yuma, Arizona (the "Yuma Project").

Before it was purchased by CEDC, the YCA Partnership was jointly held in a partnership between Bonneville Yuma Corporation and Bonneville General Corporation, both subsidiaries of Bonneville Pacific Corporation ("Bonneville"). After Bonneville filed for bankruptcy, the Trustee solicited informal bids from CEDC, Panda/Live Oak Corp. ("Panda"), and a number of other entities for a seventy-five percent (75%) interest in the Yuma Project. Panda's bid was accepted by the Trustee.

The Trustee then submitted Panda's bid to the bankruptcy court for approval, subject to higher and better offers. CEDC moved to intervene with a better offer, and CEDC's bid was eventually accepted by the bankruptcy court. The Trustee and CEDC thereafter entered into negotiations for purchase of the Yuma Project. As these negotiations progressed, CEDC also agreed to purchase Bonneville's remaining twenty-five percent (25%) interest in the Yuma Project.

The terms of sale were ultimately memorialized in the Purchase Agreement on November 19, 1992. Among other things, the agreement provided that all disputes would be settled in the United States District Court for the District of Utah. Bonneville's ownership in the Yuma Project was transferred by selling to CEDC: (1) all of the issued and outstanding shares of capital stock of Bonneville Yuma Corporation, (2) all of the outstanding partnership interests of the YCA Partnership, and (3) all of the contracts, agreements, licenses, permits, rights and other interests in the Yuma Project.

In early 1993, the Trustee inquired of CEDC whether the events triggering CEDC's second payment for the Yuma Project had occurred. The Trustee received no response until September 24, 1993, when CEDC informed the Trustee that it did not intend to pay the remaining sum due under the Purchase Agreement because of various alleged misrepresentations made by the Trustee in connection with the purchase. When CEDC failed to provide the Trustee with documentation supporting its claims, the Trustee filed a complaint in bankruptcy court claiming that CEDC had breached the Purchase Agreement.

CEDC specially appeared in the bankruptcy court for the purpose of answering the Trustee's complaint. CEDC also filed a counterclaim against the Trustee alleging breach of contract, fraud, negligent misrepresentation, and violations of § 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934.[1] In conjunction with its answer and counterclaim, CEDC filed the subject motion for withdrawal of reference. CEDC argues that this matter should be withdrawn from bankruptcy court because:

1) Its counterclaim involves adjudication of federal securities law, which requires mandatory withdrawal pursuant to 28 U.S.C. 157(d);

---

1. All of CEDC's claims appear to arise out of three alleged misrepresentations. CEDC claims that Bonneville represented the following:
   (1) The YCA Partnership owned a Provisional Wastewater Discharge Permit, and that such permit was in full force and effect on the date of the sale;
   (2) The YCA Partnership was party to a "Business Agreement" with America–West Industries, Inc. for the purchase of steam from the Yuma Project, and that such agreement was in full force and effect on the date of the sale;
   (3) The YCA Partnership would generate certain revenues based upon a report prepared by Henwood Energy Services, Inc.
   In fact, both the discharge permit and the business agreement were not in full force and effect on the date of the sale. In addition, the Henwood report contained financial data from 1991, instead of 1992 as represented on the report's cover.
   The Trustee responds that it did not make the above representations, that CEDC knew that the discharge permit had not yet been approved, and that the Business Agreement was only an agreement to agree in the future. Finally, the Trustee notes that CEDC was required to specify in the Purchase Agreement the documents upon which it relied, and that it did not specify the Henwood report. Therefore, the Trustee argues, CEDC should not be permitted now to claim that it relied upon such report.

2) It has shown "cause" for permissive withdrawal on two grounds: (1) the bankruptcy judge lacks jurisdiction to enter a final judgment pursuant to § 157(c)(1), and (2) it is entitled to a jury as to claims and counterclaims arising under state law;

3) The Trustee waived his right to bankruptcy court jurisdiction when he agreed in the Purchase Agreement that all disputes between the parties would be settled in the United States District Court for the District of Utah.

The Trustee responds to CEDC's arguments, respectively, as follows:

1) Mandatory withdrawal does not lie because CEDC's defenses and counterclaim do not require "substantial and material" interpretation of federal securities laws.

2) CEDC does not have a right to a jury trial because this case is a core proceeding, and therefore permissive withdrawal does not lie. Moreover, when CEDC affirmatively invoked the jurisdiction of the bankruptcy court by filing its counterclaim, it waived its right to a jury trial.

3) The Trustee did not waive its right to litigate contract disputes in bankruptcy court because the Purchase Agreement provided for litigation of such disputes in the United States District Court, which is in fact the court from which the bankruptcy court's limited jurisdiction is derived.

The Court will discuss the parties' arguments in the order in which they appear above.

### ANALYSIS

### Mandatory Withdrawal

CEDC argues that its counterclaim requires consideration of both title 11 and federal securities law, and therefore necessitates mandatory withdrawal pursuant to 28 U.S.C. 157(d). Section 157(d) governs mandatory withdrawal of matters from bankruptcy court, and provides in relevant part:

The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (1993).

■ Section 157(d) has been construed in basically two fashions: one strict, the other more liberal. Courts adopting the strict construction conclude that "withdrawal is mandatory when the proceeding requires resolution of title 11 and non-bankruptcy code federal law statutes, regardless of the substantiality of the legal questions presented." *In re American Body Armor & Equipment, Inc.,* 155 B.R. 588, 590 (M.D.Fla.1993). Under the second approach, which is the majority approach, withdrawal is mandatory only "if resolution of the issues requires 'substantial and material consideration' of non-bankruptcy code statutes." *Id.* This approach also has been described as requiring "significant interpretation," rather than "simple application," of non-bankruptcy code statutes. *In re Mahlmann,* 149 B.R. 866 (N.D.Ill. 1993).

The Tenth Circuit has not adopted either the "substantial and material" test or the more strict withdrawal test relied upon by CEDC. However, in this Court's opinion the Tenth Circuit is likely to adopt the "substantial and material" standard because it is founded on principled decision-making which enables bankruptcy courts to apply established legal standards in the same manner as district courts. This avoids automatic withdrawal of matters capable of such straightforward treatment by the court most familiar with the facts. Also, judicial economy is served.

In *In re Americana Expressways, Inc.,* 161 B.R. 707, 714–15 (D. Utah 1993), Judge Winder of this Court adopted the majority view, holding that:

[W]ithdrawal is mandatory only if the court can make an affirmative determination that resolution of the claims will require substantial and material consideration of non-Code statutes. The consideration of the non-Code law must entail more than its routine application to the facts (citations omitted).

Observing that "[t]he movant bears the burden of making a timely motion demonstrating that the proceeding qualifies for mandatory withdrawal," the court declared that mere speculation "about which issues could arise and whether they will be significant in resolving the proceeding" is insufficient. *Id.* at 715. Judge Winder went on to conclude that the defendant had failed to show the proceeding would "involve anything more than the routine application of [federal law] to the facts." *Id.*

█ CEDC relies upon case law which stands for the proposition that mandatory withdrawal follows whenever federal securities claims are raised, even though bankruptcy courts would have no difficulty in applying existing familiar standards. *See, e.g., In re Fairfield Communities, Inc.,* 1992 WL 158642, 1992 U.S.Dist. LEXIS 10585 (E.D.Ark.1992); *In re Lenard,* 124 B.R. 101 (D.Colo.1991); *In re American Solar King Corp.,* 92 B.R. 207 (W.D.Tex.1988); *Price v. Craddock,* 85 B.R. 570 (D.Colo.1988). *See also* CEDC's Supporting Memorandum at 6–10; CEDC's Reply Memorandum at 4–8. CEDC alternatively argues that even if the "substantial and material" test were to be applied by this Court, a strict construction of "substantial and material" should be adopted, i.e. one that would require withdrawal whenever federal securities laws will "affect the outcome" of the proceeding or require the bankruptcy court to "evaluate the merits" of federal securities claims. CEDC's Reply Memorandum at 5–6. However, CEDC has failed to identify those portions of the federal securities laws which it claims will require substantial and material consideration. In all events, this Court rejects CEDC's suggested interpretation of the "substantial and material" standard.

In contrast to the interpretation of "substantial and material" urged by CEDC is the straightforward approach adopted by the District Court of the Southern District of New York in *In re Chadborne Industries, Ltd.,* 100 B.R. 663 (S.D.N.Y.1989). *Chadborne* involved application of § 157(d) in rela-

tion to the National Labor Relations Act. In that case, the court identified the specific issues to be decided under the NLRA, and determined that there was existing law governing such issues. Because the law offered clearly articulable standards on those issues, the court found that consideration of the NLRA would not be " 'substantial and material' because the [NLRA issues] will turn on a straightforward application of [established legal standards] to the facts of this case." *Chadborne,* 100 B.R. at 668. The *Chadborne* court buttressed its conclusion by noting that the bankruptcy court was in a better position to evaluate the *federal law* issues because it was familiar with the surrounding facts. *Id.* at 669. Other courts have followed this pattern. *See e.g., In re American Body Armor & Equipment, Inc.,* 155 B.R. 588, 590–91 (M.D.Fla.1993); *In re Blinder, Robinson & Co.,* 135 B.R. 892, 894–95 (D.Colo.1991).

As in *Chadborne,* it appears to the Court in the case at bar that the allegations of misrepresentation raised by CEDC can be resolved readily by application of well established principles of federal securities law. CEDC's allegations appear to consist of simple fraud and/or negligent misrepresentation that occurred in a transaction connected with the sale of securities. *See In re Mahlmann,* 149 B.R. 866, 871 (N.D.Ill.1993) (bankruptcy judge is competent to evaluate fraud claims). Of course, resolution of these questions will require consideration of federal securities law, but such consideration has not been shown to be "substantial and material." [2] Moreover, as in *Chadborne,* the bankruptcy court in the case at bar is in a better position to evaluate the *federal law* issues because it approved the initial Purchase Agreement. Finally, as noted by the Trustee, CEDC's alleged damages of $17 million is the largest claim filed against the bankruptcy estate, and will certainly affect the administration thereof.

Based upon the foregoing, this Court adopts the "substantial and material" test, and determines that CEDC has failed to

---

**2.** CEDC argued at the hearing that this dispute will involve an issue of first impression in construing § 12(2) of the Securities Exchange Act of 1934. However, mere speculation "about which

issues could arise and whether they will be significant in resolving the proceeding" is insufficient. *See Americana,* 161 B.R. at 715.

meet its burden of demonstrating that the proceeding qualifies for mandatory withdrawal.

### Permissive Withdrawal

■ Section 157(d) also governs permissive withdrawal of matters from bankruptcy court, and provides in relevant part:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.

28 U.S.C. § 157(d) (1993). CEDC contends, without citing any legal authority in support of its position, that this dispute is a non-core proceeding and therefore the bankruptcy court lacks jurisdiction under § 157(c)(1) to enter a final judgment. However, several courts have held that a post-petition contract, such as the Purchase Agreement presented here, is a core proceeding. *In re Arnold Print Works, Inc.*, 815 F.2d 165 (1st Cir. 1987); *Edgecomb Metal Co. v. Eastmet Corp.*, 89 B.R. 546 (D. Maryland 1988); *In re Agri–Concrete Products, Inc.*, 153 B.R. 673 (Bankr.M.D.Pa.1993); *In re Telemarketing Comm.*, 95 B.R. 794 (Bankr.Colo.1989). This Court determines that this matter is a core proceeding.

■ Next, CEDC argues that it has shown cause for permissive withdrawal because it is entitled to a jury as to claims and counterclaims arising under state law. The Seventh Amendment provides:

In suits at common law, where the value of the controversy shall exceed twenty dollars, the right of trial by jury shall be preserved....

U.S. Const. amend VII.

In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Supreme Court held:

[B]y submitting a claim against the bankruptcy estate, creditors subject themselves to the court's equitable power to disallow those claims, even though the debtor's opposing counterclaims are legal in nature and the Seventh Amendment would have entitled creditors to a jury trial had they not tendered claims against the estate.

*Granfinanciera,* 492 U.S. at 60 n. 14, 109 S.Ct. at 2799–2800 n. 14. Applying *Granfinanciera* to this case, it appears that CEDC lost its right to a jury trial when it filed its counterclaim against the bankruptcy estate. CEDC asserts that such a result is unfair because its counterclaim was compulsory. Arguing that it did not consent to the bankruptcy court's jurisdiction, but rather made a special appearance to answer the Trustee's complaint, CEDC claims that its right to a jury trial has been preserved. The Trustee counters that it is not unfair to require CEDC to litigate its claims in the bankruptcy court because CEDC voluntarily invoked the bankruptcy court's authority in purchasing the Yuma Project, and was put on notice of the bankruptcy court's jurisdiction. In this regard, the First Circuit Court of Appeals has stated:

A party who contracts with an apparently healthy company—a company that has not filed a petition in bankruptcy—may find it unpleasantly surprising to have to defend its pre-petition contract in a bankruptcy court, without a jury or Article III protections. *But it is difficult to see any unfair surprise in bringing a post-petition contract action before a bankruptcy court.* Parties who contract with a bankrupt company's Trustee or with a debtor-in-possession know that they are dealing with an agent responsible to a bankruptcy court; that the bankruptcy court would resolve subsequent disputes should therefore come as no surprise.

*In re Arnold Print Works, Inc.,* 815 F.2d 165 (1st Cir.1987) (emphasis added). A similar approach was taken in *Americana:*

[T]he key to the loss of a jury trial lies not in some choice purportedly made by the claimant, but on the bankruptcy court's possession of the estate and its equitable power to allow or disallow claims made against the estate.

161 B.R. at 713–14 n. 12. This principle has particular force where, as here, a counterclaim filed in a bankruptcy proceeding seeks affirmative relief. *See In re Concept Clubs, Inc.,* 154 B.R. 581, 589 (D. Utah 1993) (counterclaim seeking affirmative relief submits

claim to equitable jurisdiction of bankruptcy court).

**Waiver**

■ Lastly, CEDC argues that, because the Purchase Agreement provides for settlement of all disputes in the United States District Court for the District of Utah, Bonneville waived its right to have matters adjudicated in the bankruptcy court. However, CEDC acknowledged at the hearing that it could not restrict by agreement this Court's discretion to refer matters to the bankruptcy court. Moreover, the bankruptcy court in fact is an arm of the United States District Court, and litigation conducted therein constitutes litigation conducted in the United States District Court.

In any event, since both the Trustee's claim and CEDC's claim involve construction of a contract specifically approved by the bankruptcy court, and since CEDC's claim, the largest of all claims filed against the estate, will require the bankruptcy court's expertise in the claims allowance process, it is manifest that this matter can most efficiently be administered by the bankruptcy court.

Based upon the foregoing, this Court determines that CEDC is not entitled to mandatory withdrawal of the reference to the bankruptcy court, and CEDC has failed to demonstrate that this proceeding qualifies for permissive withdrawal or that Bonneville waived its right to have this matter adjudicated in the bankruptcy court. Accordingly, it is hereby

ORDERED, that CEDC's motion for withdrawal of the reference to bankruptcy court is DENIED and the matter is remanded to the bankruptcy court for further proceedings.[3]

---

3. A motion to compel and a motion for protective order have been filed with this Court. Those motions should be addressed by the bankruptcy court.