In re RANND RESOURCES,
INC., Debtor.

RANND RESOURCES, INC., Plaintiff,

v.

Joseph VON HARTEN and Carolyn Von Harten, Joe Munkhoff, Manhattan West Ltd., a Nevada limited liability company, and Aguila Mining, Inc., an Alaska corporation, Defendants.

Bankruptcy No. BKS–94–23789–LBR.
No. CV–S–94–797–PMP (RJJ).

United States District Court,
D. Nevada.

Dec. 1, 1994.

Lynn G. Foster, Brett L. Foster, Foster & Foster, Salt Lake City, UT, for plaintiff.

John A. Snow, Jeppson & Lee, Reno, NV, for Manhattan West, and Aguila Min.

Michael F. Mackedon, Mackedon & McCormick, Fallon, NV, for Von Hartens and Munkhoff.

*ORDER*

PRO, District Judge.

## I. FACTUAL BACKGROUND

According to the facts as set forth in its Amended Complaint (# 15), Plaintiff Rannd Resources, Inc. ("Rannd") is a Washington corporation which was formed in 1991 to engage in mining activities. In late 1991, Rannd discovered certain mining claims in Nye County, Nevada (hereinafter the "Leased Properties"), which it believed held valuable gold mineral deposits. In January 1991, Rannd secured mining leases to mine the Nye County claims. Although it was Rannd's intention to mine the Leased Properties, Rannd soon discovered that it had insufficient capital to fully exploit them. Because of its financial limitations, Rannd de-

cided to conduct placer mining operations on the Leased Properties on a pilot plan in the hope that the results would lure investors to fully finance future operations. The pilot project was financed, in part, through loans from Defendants Joseph and Carolyn Von Harten and Joe Munkhoff.

The one year pilot project produced approximately five thousand ounces of unrefined gold and was considered a success by Rannd. Despite these results, however, Rannd was unable to secure additional investors to further finance the mining operations. By early 1993, Rannd had run out of operating capital and appeared to be unable to meet its ongoing financial obligations.

In early March 1993, the Von Hartens and Munkhoff proposed a solution to Rannd's precarious financial condition which Rannd and its shareholders accepted. Thereafter, Rannd and its shareholders entered into a "Memorandum Agreement" with the Von Hartens and Munkhoff. The Memorandum Agreement, provided, *inter alia*, for the formation of a company that would mine the Leased Properties. To effectuate this result, Rannd agreed to transfer all of its assets to the new company, including the Leased Properties to which Rannd held the exclusive mining rights. Furthermore, the new company would issue securities, forty percent of which would be issued to Rannd's shareholders, while the remaining sixty percent would be issued to the Von Hartens and Munkhoff. Pursuant to the Memorandum Agreement, the Von Hartens and Munkhoff obtained possession and control of the Leased Properties and all of Rannd's other meaningful assets.

Subsequent to the execution of the Memorandum Agreement, the Von Hartens and Munkhoff allegedly entered into an agreement with Defendant Aguila Mining, Inc. ("Aguila"), which provided, *inter alia*, that Aguila would conduct all mining operations on the Leased Properties on behalf of the company formed by the Memorandum Agreement. Aguila thereafter took possession and control of the Leased Properties and commenced mining operations. Rannd

claims that Defendants' actions with respect to the Leased Properties were wrongful, and Rannd has demanded that Defendants relinquish possession and control of the Leased Properties, which Defendants have thus far refused to do. Rannd claims that Defendants' wrongful possession of the Leased Properties has completely starved Rannd of its economic resources.

On April 1, 1994, Rannd filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Utah. Rannd thereafter commenced this Adversary Proceeding by filing a Complaint against the Defendants on July 8, 1994, also in the Utah Bankruptcy Court. The Bankruptcy case and the Adversary Proceeding were transferred to this Court on August 31, 1994, and September 8, 1994, respectively.

Presently before the Court is a Motion and Application to Transfer Adversary Proceeding to the United States District Court for Disposition (# 2) (hereinafter "Motion to Withdraw Reference") filed by Rannd on July 13, 1994. Defendants Munkhoff and the Von Hartens filed an Opposition (# 3), and a Memorandum (# 4) in support thereof, on August 19, 1994. Rannd filed a Reply (# 22) on September 21, 1994.

Also before the Court is a Motion to Suspend Proceeding or Abstain and Motion to Dismiss (# 3), filed along with a Memorandum (# 4) in support thereof by Munkhoff and the Von Hartens on August 19, 1994. Rannd filed an Opposition (# 22) on September 21, 1994. Defendants did not file a Reply.[1] Also on September 21, 1991, this case was reassigned to the undersigned following the recusal of the Honorable Lloyd D. George, Chief United States District Judge. *See* Minute Order (# 21).

## II. DISCUSSION

### A. *Motion to Withdraw Reference (# 2)*

 Rannd seeks to have this Adversary Proceeding withdrawn from the Bankruptcy Court because (1) Rannd is entitled to a jury

---

1. All the Motions presently before the Court were originally filed in the Bankruptcy Court and the United States District Court for the District of Utah, Central Division, prior to the transfer of the proceedings to this Court.

trial, and (2) mandatory withdrawal is required pursuant to 28 U.S.C. § 157(d). In response, Munkhoff and the Von Hartens argue that withdrawal is inappropriate because, (1) as Rannd has affirmatively sought the equitable jurisdiction of the Bankruptcy Court by filing its Chapter 11 case and by filing the Adversary Proceeding in the Bankruptcy Court, Rannd is not entitled to a jury trial; and (2) mandatory withdrawal is not required as this dispute involves a simple application of federal securities laws. As the Court finds that withdrawal is mandated by 28 U.S.C. § 157(d), Rannd's Motion to Withdraw Reference will be granted.

Section 157(d) of the United State Code governs mandatory withdrawal of matters from Bankruptcy Court, and provides in relevant part:

> The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (1993).

As noted by the District Court for the District of Utah in *Segal v. California Energy Dev. Corp.*, 167 B.R. 667, 670 (D.Utah 1994), "[s]ection 157(d) has been construed in basically two fashions: one strict, the other more liberal." As the court further explained,

> Courts adopting the strict construction conclude that "withdrawal is mandatory when the proceeding requires resolution of title 11 and non-bankruptcy code federal law statutes, regardless of the substantiality of the legal questions presented." *In re American Body Armor & Equipment, Inc.*, 155 B.R. 588, 590 (M.D.Fla.1993). Under the second approach, which is the majority approach, withdrawal is mandatory only "if resolution of the issues requires 'substantial and material consideration' of non-bankruptcy code statutes." *Id.* This approach also has been described as re-

quiring "significant interpretation," rather than "simple application," of non-bankruptcy code statutes. *In re Mahlmann*, 149 B.R. 866 (N.D.Ill.1993).

*Segal*, 167 B.R. at 670.

The Ninth Circuit has yet to adopt either the "substantial and material" test or the more strict withdrawal test relied upon by Rannd. Furthermore, this Court's examination of the relevant case law in this Circuit reveals that of the two federal district courts that have faced this issue, one utilized the "substantial and material" test, *see United States v. One Parcel of Real Prop.*, 137 B.R. 802, 805 (D.Or.1992) (finding that withdrawal is not mandatory if the role of "other laws" is only tangential or de minimis),[2] while the other followed the more strict approach. *See In re Daisy Sys. Securities Litigation*, 132 B.R. 752, 756 (N.D.Cal.1991) (finding withdrawal was mandatory where proper distribution of the proceeds would entail consideration of both bankruptcy law and federal securities laws). Neither of these cases, however, provided a rationale for the court's decision as to which test should be followed.

■ Rannd urges the Court to adopt the more stringent standard. After an examination the relevant case law, however, the Court finds that the "substantial and material" test should be followed because it is the better reasoned of the two approaches. As noted by the district court in *Segal*, the "substantial and material" test is "founded on principled decision-making" and "avoids automatic withdrawal of matters which are capable of ... straightforward treatment by the court most familiar with the facts." 167 B.R. at 670. Put another way, the "substantial and material" test avoids the undesirable result of mandating the mechanical withdrawal of matters that the Bankruptcy Court may be fully capable of addressing. The Court further finds that the this approach best serves the interests of judicial economy. Based upon the forgoing, this Court adopts the majority view and finds that withdrawal

---

**2.** In *United States v. One Parcel of Property,* the court relied upon *In re White Motor Corp.,* 42 B.R. 693 (N.D.Ohio 1984), wherein the court found "that Congress indicated that withdrawal would be required only if substantial and materi-

al consideration of non-bankruptcy federal laws was necessary for the resolution of a case." 137 B.R. at 805–806 (citing *White Motor Corp.,* 42 B.R. at 703).

of reference under § 157(d) is mandatory only if resolution of the issues requires "substantial and material" consideration of non-bankruptcy code statutes.

Even under this more flexible approach, however, the Court finds that withdrawal of the Adversary Proceeding is mandated. In the case sub judice, Defendants acknowledge that resolution of the various issues will require application of the federal securities laws—specifically, § 12(2) of the Securities Act of 1933, § 10 of the Securities Exchange Act of 1934, and Rule 10b–5. After a review of the Complaint, as well as the on the record adduced, the Court finds that consideration of these issues will likely require substantial and material consideration of the federal securities laws rather than a simple application thereof. Consequently, Rannd's Motion to Withdraw Reference must be granted.[3]

### B. *Motion to Suspend Proceeding or to Abstain (# 3)*

■ Defendants Munkhoff and the Von Hartens move this Court pursuant to 11 U.S.C. § 305(a) to dismiss or suspend this Adversary Proceeding, or in the alternative, to exercise its discretion to abstain from hearing the Adversary Proceeding under 28 U.S.C. § 1334(c)(1).

Under 11 U.S.C. § 305(a)(1), the Court is permitted to order dismissal of a case under Title 11 or suspension of all proceedings if the Court finds that the interests of creditors and the debtor would be better served by such dismissal or suspension. Defendants argue that abstention or suspension of the proceedings is appropriate because of the policy that favors out of court "workouts", and because the interests of the parties would best be served by suspension of further proceedings in favor of the Nye County litigation.[4]

The Court finds that neither Defendants' argument with respect to the likelihood of an out of court workout, nor the existence of the Nye County litigation, justifies abstention or staying this Adversary Proceeding. With regard to the workout, Rannd is asserting in this Adversary Proceeding that it was fraudulently induced into entering into the Memorandum Agreement with Defendants. Rannd asserts that "the parties are polarized on the issues which set[ ] the stage for the Adversary Proceeding and the need for judicial resolution." Plaintiff Rannd's Opposition (# 22), at 26. The Court agrees that at this time an out of court workout appears unlikely.

Defendants' arguments for abstention in favor of the Nye County litigation are also unpersuasive. As noted by the Bankruptcy Court in considering Defendants' Motion for Relief from the Automatic Stay, this Adversary Proceeding adds parties that are essential to the resolution of the issues—namely, Defendants Manhattan–West and Aguila—that are absent from the Nye County litigation. Furthermore, Rannd's Complaint includes allegations which implicate the federal securities laws. This leads the Court to conclude that more complete relief can be afforded in this federal Adversary Proceeding. Consequently, the Court will not dismiss or suspend this Adversary Proceeding pursuant to 11 U.S.C. § 305(a), and, for these same reasons, the Court further finds that abstention pursuant to 28 U.S.C. § 1334(c)(1) is also inappropriate. Accordingly, Defendants Motion to Suspend Proceeding or to Abstain shall be denied.

### C. *Motion to Dismiss (# 3)*

■ Finally, Munkhoff and the Von Hartens argue that this Adversary Proceeding should be dismissed because Rannd has failed to join some of its shareholders, who may be indispensable parties to this action.

---

**3.** As the Court finds that 28 U.S.C. § 157(d) requires withdrawal, it need not address Rannd's arguments with respect to its right to a jury trial.

**4.** The "Nye County litigation" refers to a civil action brought by Defendants Munkhoff and the Von Hartens on November 4, 1993, in the Fifth Judicial District Court for the State of Nevada in and for the County of Nye. In that action,

Munkhoff and the Von Hartens sought damages, specific performance and injunctive relief against Plaintiff and some of its officers and stockholders on various causes of action related to the Memorandum Agreement. That action is presently subject to an automatic stay pursuant to 11 U.S.C. § 362.

Defendants rest their Motion to Dismiss on Rannd's apparent failure to provide proof that the shareholders in question have fully assigned their claims to Rannd. Rannd responds to this argument by attaching copies of the shareholders' written assignments. *See* Plaintiff Rannd's Opposition (# 22), Ex. "E". As this purported lack of proof was the only ground asserted in support of the Motion to Dismiss, and Rand has now provided unchallenged evidence as to the assignment of shareholder claims, Defendants' Motion to Dismiss will also be denied.

IT IS THEREFORE ORDERED THAT Plaintiff's Motion to Withdraw Reference (# 2) is Granted, and reference of the Adversary Proceeding, CV–S–94–797–PMP (RJJ), is withdrawn pursuant to 28 U.S.C. § 157(d).

IT IS FURTHER ORDERED THAT Defendants' Motion to Suspend Proceeding or to Abstain (# 3) is Denied.

IT IS FURTHER ORDERED THAT Defendants' Motion to Dismiss (# 3) is Denied.